

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

## NO. PD-1892-11

**BRANDON SCOTT BLASDELL, Appellant**

**v.**

**THE STATE OF TEXAS**

### ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW
### FROM THE NINTH COURT OF APPEALS
### MONTGOMERY COUNTY

PRICE, J., delivered the opinion of the Court in which KELLER, P.J., and WOMACK, JOHNSON, KEASLER, HERVEY, COCHRAN and ALCALA, JJ., joined. HERVEY, J., filed a concurring opinion in which KEASLER and COCHRAN, JJ., joined. MEYERS, J., did not participate.

### O P I N I O N

The only evidence against the appellant in his prosecution for aggravated robbery was the identification testimony of the victim. The appellant offered testimony from a forensic psychologist intended to educate the jury about the so-called "weapon focus effect." The trial court ruled that this expert testimony was not relevant, however, because it was

insufficiently tied to the particular facts of the case, and the Ninth Court of Appeals affirmed the appellant's conviction in an unpublished opinion.[1]  We granted the appellant's petition for discretionary review in order to examine the court of appeals's holding that the trial court did not abuse its discretion to exclude the expert's testimony for a lack of "fit."  We reverse.

## FACTS AND PROCEDURAL POSTURE

Katy Hadwin had stopped to put gas in her car on the evening of February 11, 2007, when a man approached her, pointed a gun at her face, and demanded her purse.  Hadwin fumbled to unlock her car door and reached across the driver's seat to retrieve her purse from the passenger seat as her assailant yelled, "Hurry up, bitch."  Once she gave the purse to her assailant, he fled on foot to a nearby older model white truck that was "similar to a Toyota."  Although it was close to dark, around 8:00 p.m., the scene was well lit.

Approximately a week later, Detective Juan Sauceda of the Conroe Police Department called Hadwin down to the station to view a photo lineup.  Because the appellant roughly fit the description that Hadwin had given to the responding officers, and because he owned a white truck (albeit a Dodge), he became a suspect in the crime, and Sauceda compiled the photo lineup by taking the appellant's photo and those of five others whom he thought looked like the appellant.  Before showing Hadwin the photo lineup, Sauceda asked her to fill out

---

[1]  *Blasdell v. State*, No. 09-09-00286-CR, 2010 WL 3910586 (Tex. App.—Beaumont 2010) (not designated for publication).  This Court granted the appellant an out-of-time petition for discretionary review in 2011.  *Ex parte Blasdell*, No. AP-76,697, 2011 WL 5903657 (Tex. Crim. App.—2011) (not designated for publication).

a suspect description form. There she described her assailant as having "light blue/green eyes" and a "unibrow." She described the gun that had been pointed at her face as a "revolver." When Sauceda showed her the photo lineup, Hadwin identified the appellant as her assailant, writing on the lineup form that she was "100% sure that is the guy."

At trial, Hadwin repeated her description of the robber as having "light colored eyes and a unibrow[,]" which she described as "one eyebrow instead of two" and "thick." She repeated that she was "100% sure" of her identification in the photo lineup "[b]ecause I can't forget his face." She also identified the appellant in the courtroom as the man who robbed her. Although she was "not really" familiar with guns, she recognized that what had been pointed at her face was a black revolver. She acknowledged that she had gotten a "good look at" it, and that having it pointed at her face was "the scariest thing" she had ever been through. Hadwin initially estimated that the robbery had spanned five minutes, but after going over the events with defense counsel, she agreed it probably occurred over a period of "a little longer than 20 seconds." Though Hadwin ultimately expressed "no doubt" that the appellant was the robber, the State presented no evidence to corroborate that identification. Hadwin never recovered the purse or its contents, nor did she receive notification that anyone ever tried to use her credit cards. None of these items was found in the appellant's possession when he was arrested, and no gun was found or even registered in his name.

After the State rested, the trial court conducted a hearing outside the jury's presence

to preview the testimony of Dr. Steven Rubenzer, a forensic psychologist whom the appellant proposed to call as an expert witness with respect to the potential pitfalls with eyewitness identification.[2] Among other matters about which the appellant desired Rubenzer to testify was a phenomenon known as the weapon focus effect, which he characterized as "a tendency, when there is a weapon involved, particularly in brief encounters, for the weapon to essentially attract attention away from the perpetrator's face and, by doing so, result in lesser accuracy for the identification." Rubenzer had reviewed the offense report and had talked with defense counsel about the facts of the case, but had interviewed neither Hadwin nor Sauceda about the circumstances of the offense or the photo lineup. He was aware, however, that the robber had pointed the revolver at Hadwin's face during the brief robbery. Toward the end of the hearing, the trial court questioned Rubenzer with respect to this topic:

---

[2] It is not entirely clear from the record whether this hearing was conducted under the auspices of Rule 705(b) of the Texas Rules of Evidence, to allow the State to preview the underlying facts or data supporting Dr. Rubenzer's expert testimony, or under Rule 702, so that the appellant could make a threshold showing of admissibility by establishing the reliability and relevance of the psychological principles involved. *Compare* TEX. R. EVID. 705(b) ("**Voir dire.** Prior to the expert giving the expert's opinion or disclosing the underlying facts or data, a party against whom the opinion is offered upon request in a criminal case shall . . . be permitted to conduct a *voir dire* examination directed to the underlying facts or data upon which the opinion is based. This examination shall be conducted out of the hearing of the jury."), *with* TEX. R. EVID. 702 ("If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise."), *and Jordan v. State*, 928 S.W.2d 550, 553 (Tex. Crim. App. 1996) (construing Rule 702 as placing a burden on the proponent of expert psychological testimony with respect to eyewitness identification to establish reliability and relevance of that evidence). Presumably it was the latter, since it was defense counsel who conducted the initial examination of Rubenzer.

THE COURT: Okay. Then that's – weapon focus issue. Do you have any specific opinion that that happened in this case, the weapon distracted or reduced the focus on the person's –

[Rubenzer]: Yes.

THE COURT: – face?

[Rubenzer]: Yes.

THE COURT: Do you have an opinion? Tell me about that.

[Rubenzer]: Well, she identified that – the weapon on the description sheet as a revolver.

THE COURT: And that – and that alone, you're saying, based on your studies, et cetera, would indicate that –

[Rubenzer]: It tells me that she did look at the gun.

THE COURT: Well, but ultimately we're talking about misidentification or bias or whatever you want to call it, with respect to a photo spread and her identification as to the photo spread. Do you have an opinion that that played a role in this case or just that it could because we know generally that's something that happens?

[Rubenzer]: I'd say it would have to be a "possibly."

THE COURT: "Possibly." Okay.

While the trial court allowed Rubenzer to testify about certain aspects of the procedure that Sauceda utilized in conducting the photo lineup, he prohibited the appellant from asking Rubenzer any questions designed to educate the jury about the weapon focus effect.

In his only point of error on appeal, the appellant argued that the trial court erred in excluding Rubenzer's expert testimony regarding the weapon focus effect. Setting aside the

question whether the appellant had established the validity of the science that purportedly establishes the weapon focus effect, and hence, its reliability for purposes of Rule 702,[3] the court of appeals affirmed the trial court's ruling on another basis. Because Rubenzer "did not commit to an opinion that the 'weapon focus effect' had impacted [Hadwin's] identification of" the appellant, the court of appeals held, any expert testimony on that topic

---

[3] *See Blasdell*, *supra*, at *2 n.2 ("Because it is not necessary to the resolution of this appeal, we need not address whether the 'weapon focus effect' is based on valid science. *See* TEX. R. APP. P. 47.1."). From our review of the record, it does not appear that the trial court harbored any particular reservations about Rubenzer's qualifications to testify as a forensic psychologist with expertise on the general subject of the reliability of eyewitness identification. Even so, the State invites us to affirm the court of appeals's judgment on the grounds that the appellant failed to offer evidence at the hearing to establish the reliability of *any* expert opinion with respect to the weapon focus effect. We have elsewhere noted that, at least as of 2001, a substantial portion of the relevant community of forensic psychologists has regarded the weapon focus effect to be a sufficiently well-established phenomenon to merit expert testimony. *See Tillman v. State*, 354 S.W.3d 425, 436-37 (Tex. Crim. App. 2011) (citing *New Jersey v. Henderson*, 27 A.3d 872, 911-12 (N.J. 2011), which in turn cites Saul M. Kassin et al., *On the "General Acceptance" of Eyewitness Testimony Research: A New Survey of the Experts*, 56 AM. PSYCHOLOGIST 405, 407 (2001)). Indeed, more or less general acceptance of the weapon focus effect within the community of forensic psychologists may have had its genesis in a seminal study conducted as early as 1992. *See* Nancy M. Steblay, *A Meta-Analytic Review of the Weapon Focus Effect*, 16 LAW & HUM. BEHAV. 413, 421 (1992) ("The weapon effect does reliably occur, particularly in crimes of short duration in which a threatening weapon is visible. * * * [T]he weapon focus effect provides a good example of a phenomenon that may be viewed differently at this time compared to its status as a hypothesis just a few years before."). *But see* George Vallas, Article: *A Survey of Federal and State Standards for the Admission of Expert Testimony on the Reliability of Eyewitnesses*, 39 AM. J. CRIM. L. 97, 104 (Fall 2011) (observing that most empirical studies of the weapon focus effect involve laboratory simulations and remarking that "[t]he results of studies attempting to detect the effects of weapon focus in the field are somewhat mixed"). Be that as it may, we decline the State's invitation to resolve the issue of the scientific validity of the weapon focus effect today, since we do not ordinarily address issues on discretionary review that have not been first decided by the intermediate courts of appeals. *E.g.*, *Stringer v. State*, 241 S.W.3d 52, 59 (Tex. Crim. App. 2007) (in its discretionary review capacity, this Court does not review issues not decided by the court of appeals, but the court of appeals could consider the State's alternative argument on remand). In view of our ultimate disposition today, the question of the admissibility of Rubenzer's proposed testimony as a function of its reliability becomes a necessary issue for the court of appeals to address on remand.

was not "sufficiently tied to the pertinent facts of the case[.]"[4] "Without tying the general background on the topic to an opinion pertinent to [Hadwin's] identification of" the appellant, the court of appeals summarized, "the trial court could have reasonably concluded that Dr. Rubenzer's testimony concerning the 'weapon focus effect' would not assist the trier of fact."[5] In essence, the court of appeals concluded that Rubenzer's testimony failed to "fit" the weapon focus effect to the facts of the case and was therefore not relevant to aid the jury under Rule 702. We granted the appellant's petition to examine this holding.

## LAW AND ANALYSIS

Since the court of appeals decided this case, this Court has issued an opinion in *Tillman v. State*, containing a fairly comprehensive discussion of the admissibility of expert testimony, specifically with respect to eyewitness identification.[6] There, we reiterated that, for such expert testimony to be admissible under Rule 702, the party offering it must prove by clear and convincing evidence that it is sufficiently reliable and that it is relevant in the sense that it will help the jury reach an accurate result.[7] That is to say, the proponent must establish both that the expert opinion testimony enjoys a reliable scientific foundation and

---

[4] *Id*. at *3 (internal quotation marks omitted).

[5] *Id*.

[6] 354 S.W.3d 425 (Tex. Crim. App. 2011).

[7] *Id*. at 435.

that it will assist the trier of fact to resolve an issue of consequence in the case.[8]  As with other determinations regarding the admissibility of evidence, a trial court's ruling with respect to both the reliability prong and the relevance prong is subject to an abuse of discretion standard on appeal, and a reviewing court may not reverse those rulings unless they fall outside the zone of reasonable disagreement.[9]

Because the court of appeals in this case found it unnecessary to address the reliability prong, we focus our attention today on *Tillman*'s treatment of the relevance prong.  We observed in *Tillman* that, to be relevant, an expert's opinion with respect to eyewitness identification need not take account of every available fact underlying a particular identification or identification procedure, but only "enough of the pertinent facts to be of assistance to the trier of fact on a fact in issue."[10]  We also recognized that, as with any other expert witness, sufficient information to support an informed expert opinion with respect to the reliability of eyewitness identification may be supplied in the form of facts that the expert learns for the first time in the courtroom, including facts that are embraced within a

---

[8]  *Id.*

[9]  *Id.*

[10]  *Id.* at 438.  *See also  Jordan, supra*, at 556 ("The question under Rule 702 is not whether there are *some* facts in the case that the expert failed to take into account, but whether the expert's testimony took into account *enough* of the pertinent facts to be of assistance to the trier of fact on a fact in issue.").

hypothetical question posed to the expert during his testimony.[11] If a hypothetical question fails to echo any particular "event" that "occurred in that particular case[,]" it would result in expert testimony that is not relevant for purposes of Rule 702 because it does not "fit" the facts of the case and therefore cannot help the jury.[12]

Finally, and of particular significance to our analysis today, we note that, at more than one point in *Tillman*, we observed that expert testimony with respect to the reliability of eyewitness identification will be deemed "relevant" so long as it illustrates how particular identification procedures "*might* be affected" by various "factors" or "circumstances,"[13] or "how various factors in eyewitness-identification processes *can* contribute to dissociation in eyewitnesses."[14] Consistent with these observations, we concluded on the facts of *Tillman* itself that "it was imperative that the jury be exposed to the full spectrum of *possible implications* resulting from [the suggestive identification procedure at issue there] in order

---

[11]

    *Id*. at 439. We specifically observed that hypothetical questions posed to the eyewitness expert in *Tillman* that "mirrored" the particular identification procedure that was used was sufficient to tie his expert opinion to the facts of the case, inasmuch as they "exposed the expert to the pertinent facts of the specific case." *Id*. *See also Jordan*, *supra*, at 556 n.8 (expert opinion with respect to eyewitness identification may be predicated on facts or data made known to the expert during trial, including via hypothetical questions).

[12]

    *Id*. at 440.

[13]

    *Id*. at 438 & 439 (emphasis added).

[14]

    *Id*. at 441 (emphasis added).

to have a full understanding of the subject."[15]  Thus we made it clear in *Tillman* that, for the testimony of an eyewitness identification expert to be relevant for purposes of Rule 702, it is enough that he is able to say that a particular identification procedure, or the facts or circumstances attending a particular eyewitness event, has been empirically demonstrated to be fraught with the *potential* to cause a mistaken identification.

Rubenzer was not in the courtroom to hear Hadwin's testimony, and he never interviewed her or Sauceda about the circumstances of the robbery.  But he had read the offense report and been told about the robbery by the appellant's counsel before trial, and he was made aware before he testified that the man who robbed Hadwin had pointed a gun at her face and that, even though the robbery was brief, she recognized that the gun was a revolver.  This was sufficient information to lead him to the conclusion, consistent with his expert knowledge about the weapon focus effect, that there was a real "possibility" that her ability to make a reliable identification of the robber had been compromised.  No expert could testify with significantly greater certainty that an eyewitness's perception was *in fact* impaired by the threatening presence of a gun, but it is no less valuable to educate a jury of the realistic *potential*, if that has been empirically shown to exist.  Consistent with *Tillman*, we hold that even the "possibility" of distorted perception under the circumstances was sufficient to establish a "fit" with the facts of the case, and hence, the relevance of

---

[15] *Id*. at 442 (emphasis added).

Rubenzer's expert testimony. Particularly given that Hadwin's testimony comprised the vast bulk of the State's case to establish the appellant's guilt,[16] we believe that, as in *Tillman*, it was outside the zone of reasonable disagreement to prevent the appellant from informing the jury about this viable possibility.

This is not to suggest that a trial court will abuse its discretion in any case in which a phenomenon such as weapon focus effect might apply. Not all expert testimony that is logically "relevant" will invariably serve to "assist" a jury for purposes of Rule 702. As we have remarked before:

> A judicious application of the Rule 702 helpfulness standard and Rule 403 balancing factors is necessary. * * * Such determinations must necessarily be resolved on a case-by-case basis, as they will depend upon factors such as the content of the testimony, the context in which it is offered, and the state of the evidence.[17]

As the quantity and quality of evidence establishing a defendant's identity as the perpetrator of the charged offense increases, the possibility that expert testimony will facilitate the jury's resolution of that issue will decrease concomitantly. At some point, a trial court may decide that the expert testimony is, on balance, insufficiently helpful to the jury's resolution of the

---

[16] Other than Hadwin's identification of the appellant as the robber, the only evidence connecting him to the offense was the fact that he generally fit the description she gave to the police of the perpetrator, and that he drove a white truck, albeit of American rather than Japanese make.

[17] *Ortiz v. State*, 834 S.W.2d 343, 347 (Tex. Crim. App. 1992) (quoting Steven Goode, Olin Guy Wellborn III & Michael Sharlot, 1 TEXAS PRACTICE: GUIDE TO THE RULES OF EVIDENCE: CIVIL AND CRIMINAL § 702.2 (1st ed. 1988)).

issue to justify the time and resources it would take to present it at trial. Such a decision under Rule 702 would fall squarely within the zone of reasonable disagreement. In the instant case, however, given the content of the Rubenzer's expert testimony, the context in which it was offered, and, most pertinently, the paucity of other evidence to establish the appellant's identity as Hadwin's assailant, we hold that the court of appeals erred in concluding that Rubenzer's weapon focus effect testimony was not relevant to the issues in this case.

## CONCLUSION

Accordingly, we reverse the judgment of the court of appeals and remand the cause to that court for further proceedings consistent with this opinion.[18]

DELIVERED:      December 5, 2012
PUBLISH

---

[18] *See* note 3, *ante*. Concluding that the evidence is relevant is only part of the Rule 702 inquiry. Rule 702 also requires that the expert be qualified to testify about the matter and that the evidence satisfy the reliability requirements. And even if admissible under Rule 702, evidence may be excluded under Rule 403. *See* TEX. R. EVID. 403 ("Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence."). To the extent that any of these issues are involved in this appeal, the court of appeals should address them, as necessary, on remand. TEX. R. APP. P. 47.1. If the court of appeals determines that the evidence is admissible, it would then need to conduct a harm analysis. *See* TEX. R. APP. P. 44.2(b). We express no opinion with respect to these issues today.