In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

**NO. 09-09-00286-CR**
_____

**BRANDON SCOTT BLASDELL, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 9th District Court**
**Montgomery County, Texas**
**Trial Cause No. 07-11-11972 CR**

**OPINION ON REMAND**

In this appeal, which comes to us on remand from the Court of Criminal Appeals, we consider whether the trial court abused its discretion in excluding the testimony of a forensic psychologist concerning the weapon focus effect. *See Blasdell v. State*, 384 S.W.3d 824, 831 (Tex. Crim. App. 2012). We conclude the trial court's exclusion of the testimony was not error, as the testimony was not shown to be reliable. We affirm the trial court's judgment.

## Background

During the trial of this aggravated robbery case, the trial court excluded the testimony of Dr. Steven Rubenzer, a forensic psychologist, concerning witness identifications that occur during crimes that involved guns. Dr. Rubenzer labelled the phenomena as the weapon focus effect.

Based chiefly on Blasdell's identification by the robbery victim, Katy Hadwin, the jury convicted Blasdell of the robbery. Shortly after the robbery occurred, Katy gave the police an oral and written description of the man who robbed her. Eight days later, just before picking Blasdell's image from a photographic lineup, Katy gave police a more detailed written description of the robber. While testifying before the jury, Katy identified Blasdell in court as the person who robbed her.

In the written statement given by Katy on the date of the robbery, the robber is described as a white male, about 5'9" or 5'11" tall. In the more detailed written description given to police eight days after the robbery, the assailant is described as a right-handed white male, wearing a white shirt and blue jeans, carrying a revolver, weighing 150 pounds, and as having short brown hair, a "unibrow," light blue/green eyes, and a fairly clear complexion. The detective then showed Katy a photographic lineup containing six male images: from the array, Katy identified

2

Blasdell, and she wrote her initials by Blasdell's image. Katy additionally noted on the array: "This is the guy who robbed me. I am 100% sure that is the guy."

At trial, Katy described how she was robbed on the evening of February 11, 2007, as she attempted to get gas at a gas station. In her testimony, Katy described the person who robbed her as a male with "light-colored eyes and a unibrow[.]" According to Katy, during the robbery, the robber was close enough to her that she could have touched him. She also testified that when she identified Blasdell's image in the array, she was "100 percent sure" that her identification was accurate. After identifying Blasdell in court as the person who robbed her, Katy testified that she had "[n]o doubt" Blasdell was the person who robbed her.

Katy also testified that the gun she saw during the robbery was a black revolver that the robber pointed at her face; this fact led Dr. Rubenzer to conclude that she had focused on the gun during the robbery. Katy affirmed that she had gotten "a good look at his gun[]" during the robbery, and she acknowledged that she was frightened and shaken up by the robbery. According to Katy, the robbery occurred over a time-period of "a little longer than [twenty] seconds."

The trial court conducted a hearing outside the jury's presence to determine the admissibility of Dr. Rubenzer's testimony regarding Katy's identification of Blasdell. Dr. Rubenzer, a board-certified forensic psychologist, explained that he

3

had read numerous articles and books in the area of eyewitness identification and that he had testified in other cases as an expert on eyewitness identification. Dr. Rubenzer defined the "weapon focus effect" as "a tendency, when there is a weapon involved, particularly in brief encounters, for the weapon to essentially attract attention away from the perpetrator's face and, by doing so, result in lesser accuracy for the identification." In forming his opinion in Blasdell's case, Dr. Rubenzer stated that he reviewed the offense report, the photo spread, Katy's description of her assailant, and that he had discussed the case with defense counsel; however, he agreed that he had not interviewed Katy or any of the police involved in the investigation of the robbery. With respect to whether Katy's identification was inaccurate, Dr. Rubenzer stated that in his opinion, the weapon pointed in Katy's face had "possibly" impacted her ability to accurately identify Blasdell as the robber.

The trial court felt the testimony about the weapon focus effect was not relevant, noting that Dr. Rubenzer's opinion did not "provide information that the jury doesn't have anyway[,]" and excluded it from the jury. The trial court added that the testimony it was excluding would not assist the trier of fact and that it was not sufficiently tied to the facts of the case. While the trial court excluded Dr. Rubenzer's testimony describing the weapon focus effect, it allowed Dr. Rubenzer

to testify to the jury about various other confounding factors that can complicate a witness's ability to accurately identify the person who committed the crime. For instance, the trial court allowed the jury to hear Dr. Rubenzer's testimony regarding problems presented by some types of photographic lineups and regarding problems in identification that can arise from "cross-race" identifications.

Appeal and Remand

After the jury convicted Blasdell of robbery, Blasdell appealed. In his only issue, Blasdell claimed the trial court erred in excluding Dr. Rubenzer's testimony about the weapon focus effect. *Blasdell v. State*, No. 09-09-00286-CR, 2010 Tex. App. LEXIS 8092, at *1 (Tex. App.—Beaumont Oct. 6, 2010) (mem. op., not designated for publication) *rev'd*, 384 S.W.3d 824, 831 (Tex. Crim. App. 2012). We affirmed the trial court's exclusion of Dr. Rubenzer's testimony, holding:

> Here, Dr. Rubenzer did not commit to an opinion that the "weapon focus effect" had impacted Katy's identification of Blasdell [and thus,] Dr. Rubenzer's testimony . . . was not relevant to the juror's resolution of the issues. Absent a showing that the expert's testimony is "sufficiently tied" to the pertinent facts of the case, the expert's testimony is not relevant and does not "assist the trier of fact." . . . Without tying the general background on the topic to an opinion pertinent to Katy's identification of Blasdell, the trial court could have reasonably concluded that Dr. Rubenzer's testimony concerning the "weapon focus effect" would not assist the trier of fact.

*Blasdell*, 2010 Tex. App. LEXIS 8092, at **7-8 (internal citations omitted).

5

The Court of Criminal Appeals granted Blasdell's petition for discretionary review to "examine the court of appeal's holding that the trial court did not abuse its discretion to exclude the expert's testimony for a lack of 'fit.'" *Blasdell*, 384 S.W.3d at 826. Examining the relevance prong of Rule 702, the Court of Criminal Appeals specified that "for the testimony of an eyewitness identification expert to be relevant for purposes of Rule 702, it is enough that he is able to say that a particular identification procedure, or the facts or circumstances attending a particular eyewitness event, has been empirically demonstrated to be fraught with the *potential* to cause a mistaken identification." *Id*. at 830; *see Tillman v. State*, 354 S.W.3d 425, 441-42 (Tex. Crim. App. 2011); *see also* Tex. R. Evid. 702. Concluding that Dr. Rubenzer had "sufficient information to lead him to the conclusion, consistent with his expert knowledge about the weapon focus effect, that there was a real 'possibility'" that Katy's ability to make a reliable identification could have been compromised, the Court of Criminal Appeals held that "even the 'possibility' of distorted perception under the circumstances was sufficient to establish a 'fit' with the facts of the case, and hence, the relevance of Rubenzer's expert testimony." *Blasdell*, 84 S.W.3d at 830-31. The Court of Criminal Appeals reversed our judgment and remanded the case to us for further proceedings to determine: (1) whether Dr. Rubenzer was shown to be qualified to

testify about the weapon focus effect, (2) whether the evidence about the weapon focus effect was shown by the party that offered it to be sufficiently reliable that the testimony should have been allowed to be considered by the jury, and (3) if the trial court erred by excluding Dr. Rubenzer's testimony, whether Blasdell was harmed. *Id.* at 831 & n.18.

Dr. Rubenzer's Expert Qualifications

The trial court conducted a hearing, outside the jury's presence, to determine whether to admit Dr. Rubenzer's testimony. The evidence from the hearing reflects that Dr. Rubenzer is licensed as a psychologist by the State of Texas and that he has a private practice as a forensic psychologist in Houston, Texas. According to Dr. Rubenzer, he has had a full-time private practice since 2004; before that, he worked as a psychologist doing competency and insanity examinations and reports for Harris County. Dr. Rubenzer's resume reflects that at the time of the hearing, he was on the editorial board of two scientific journals, and that he acted as a consulting editor for a scientific journal devoted to psychological testing. Dr. Rubenzer also served as a member of the adjunct faculty in the department of psychology at Sam Houston State University between 1999 and 2004.

With respect to eyewitness identifications, Dr. Rubenzer described himself as "basically self-educated." He stated he had read 85 to 90 abstracts on the topic,

7

seven books that discussed eyewitness identifications, and he testified that he had attended symposiums at the annual or biannual psychological society meetings for the last five years where speakers had addressed eyewitness identifications. According to Dr. Rubenzer, he currently spends forty to fifty percent of his time on reading "career-relevant material" in the area of eyewitness identification, and he stated that the field generates approximately ten to fifteen percent of his income. Although he was currently involved in an independent research project in the field of eyewitness identification, he had not yet started collecting data. Dr. Rubenzer explained that he had not yet published any articles in peer-reviewed journals in the field of eyewitness identification. However, he had written two articles in the field of eyewitness identification that were published in publications sponsored by criminal defense lawyers, and he also had made two presentations to those same organizations about issues related to eyewitness identifications.

In summary, Dr. Rubenzer demonstrated that he had knowledge about various confounding factors that may exist in a witness's ability to accurately recall, describe, and identify the perpetrator seen committing a crime. Regardless of our prior disagreement on the relevance of Dr. Rubenzer's testimony that Katy's identification was possibly affected by her focus on the gun, the Court of Criminal Appeals deemed the existence of a "real 'possibility'" that [Katy's] ability to make a

reliable identification of the robber had been compromised" to be of assistance in a case where no other significant evidence established that Blasdell was the person who committed the robbery. *Blasdell*, 384 S.W.3d at 830-31.

> With respect to the testimony of an expert, Rule 702 provides:
>
> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise.

Tex. R. Evid. 702. Dr. Rubenzer testified that he had previously provided testimony on the subject of eyewitness identification two or three previous times. Dr. Rubenzer stated that there were accepted guidelines, generally accepted in the field, regarding procedures for lineup identifications, and that these guidelines were published by the National Institute of Justice. Dr. Rubenzer testified that, based on his experience and training, he could testify whether the proper procedures were followed.

With respect to the topic of the weapon focus effect, and in addition to his education and license as a psychologist, Dr. Rubenzer's resume reveals he reviewed two peer-reviewed articles that, from their titles, appear relevant to the topic of the weapon focus effect. His resume also reflects that he had attended two symposiums where speakers made presentations on that same topic.

9

"The question of whether a witness offered as an expert possesses the required qualifications rests largely in the trial court's discretion." *Wyatt v. State*, 23 S.W.3d 18, 27 (Tex. Crim. App. 2000). Based on Dr. Rubenzer's educational experience and his degree as a licensed psychologist, the trial court apparently decided to admit Dr. Rubenzer's testimony regarding what factors may interfere with a witness's ability to accurately identify the person who perpetrated a crime. And, whether a gun is a distraction during a brief encounter does not appear to be a question far removed from what the jury would likely expect based on their common experience; thus, the focus on the witness's qualifications with respect to this topic are less important than whether the testimony is reliable. *See Davis v. State*, 313 S.W.3d 317, 350 (Tex. Crim. App. 2010) (citing *Rodgers v. State*, 205 S.W.3d 525, 527-28 (Tex. Crim. App. 2006)).

The trial court allowed Dr. Rubenzer to explain the possible confounding factors involved in eyewitness identifications based on the same general credentials that he had regarding the weapon focus effect. To the extent the trial court disallowed Dr. Rubenzer's testimony based on his qualifications as an expert in the weapon focus effect, we hold the trial court abused its discretion.

10

## Reliability

The Court of Criminal Appeals also asked that we address whether Dr. Rubenzer's testimony about the weapon focus effect was reliable under Rule 702. *Blasdell*, 384 S.W.3d 831, n.18. The reliability prong of Rule 702 is used to determine whether "[e]xpert testimony in the field of psychology pertaining to the reliability of eyewitness identifications" has its basis in sound scientific methodology. *Tillman*, 354 S.W.3d at 435; *see also Weatherred v. State*, 15 S.W.3d 540, 542 (Tex. Crim. App. 2000). To establish reliability, the proponent of the evidence must show that "'(1) the field of expertise involved is a legitimate one, (2) the subject matter of the expert's testimony is within the scope of that field, and (3) the expert's testimony properly relies upon or utilizes the principles involved in that field.'" *Tillman*, 354 S.W.3d at 435-36 (quoting *Weatherred*, 15 S.W.3d at 542).

With respect to eyewitness identifications, the Court of Criminal Appeals in *Tillman* stated that "psychology is a legitimate field of study and that the study of the reliability of eyewitness identification is a legitimate subject within the area of psychology." *Tillman*, 354 S.W.3d at 436. In *Blasdell*, the Court noted that "a substantial portion of the relevant community of forensic psychologists has regarded the weapon focus effect to be a sufficiently well-established phenomenon

to merit expert testimony."[1] *Blasdell*, 384 S.W.3d at 829 n.3. In this case, at this point, we focus on whether Blasdell demonstrated that Dr. Rubenzer's testimony about the weapon focus effect properly relied upon or utilized the principles involved in that field. *See Tillman*, 354 S.W.3d at 436.

While Dr. Rubenzer generally described the weapon focus effect, he did not describe the principles that apply to it. For instance, other than the definition he provided for the term, he did not explain or discuss the peer reviewed articles that he cited in his resume that appear to specifically address the topic, nor did he describe the content of the two presentations he attended where the subject had been discussed. Blasdell never provided the trial court with transcripts of the articles discussing the weapon focus effect, nor was the trial court provided copies of whatever documents may have accompanied the presentations Dr. Rubenzer attended at his psychological meetings where the weapon focus effect was discussed. The trial court was left solely with Dr. Rubenzer's brief definition that

---

[1]We note that during the hearing, Dr. Rubenzer did not discuss what a substantial portion of the forensic psychology community thought about the weapon focus effect or whether the group agreed that it was a matter that merited expert testimony, and we further note that this fact was never established elsewhere in the testimony that was before the trial court. We further note that the trial court made its decision in 2009, more than two years before the Court of Criminal Appeals discussed what forensic psychologists thought about the merits of the weapon focus effect. *See Tillman v. State*, 354 S.W.3d 425, 425 (Tex. Crim. App. 2011).

12

the weapon focus effect occurred "when there is a weapon involved, particularly in brief encounters, for the weapon to essentially attract attention away from the perpetrator's face and, by doing so, result in lesser accuracy for the identification."

Without any further basis to explain the topic's principles beyond the mere *ipse dixit* of Dr. Rubenzer, the trial court was not in a position to properly evaluate whether Dr. Rubenzer had either properly stated or applied the principles that govern the weapon focus effect to Blasdell's case. *See id.* Without more, such as information about what the studies Dr. Rubenzer cited had shown regarding the impact of a weapon being displayed on the reliability of a witness's identification of the perpetrator, the trial court was not able to determine whether Dr. Rubenzer's testimony about the weapon focus effect in Blasdell's case was reliable. *See id.* at 437-38 (explaining that the expert had sufficiently explained specific principles of psychology in the area of eyewitness identification to make the expert's testimony reliable).

We conclude that Blasdell provided the trial court with insufficient information to allow the trial court to determine that Dr. Rubenzer's testimony was reliable. Consequently, we hold the trial court did not abuse its discretion in excluding Dr. Rubenzer's proffered testimony about the weapon focus effect, and we affirm the trial court's judgment.

AFFIRMED.

                                            _____

                                                    HOLLIS HORTON
                                                       Justice

Submitted on September 19, 2013
Opinion Delivered January 8, 2014
Publish

Before McKeithen, C.J., Kreger and Horton, JJ.