FILED IN
COURT OF CRIMINAL APPEALS

April 10, 2015

ABEL ACOSTA, CLERK

PD-0162-14
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 4/10/2015 3:54:27 PM
Accepted 4/10/2015 4:48:32 PM
ABEL ACOSTA
CLERK

**NO. PD-0162-14**

IN THE COURT OF CRIMINAL APPEALS
OF TEXAS AT AUSTIN

---

**BRANDON SCOTT BLASDELL,** *Appellant,*

**v.**

**THE STATE OF TEXAS**, *Appellee*

---

**No. 09-09-00286-CR**
COURT OF APPEALS
FOR THE NINTH DISTRICT OF TEXAS
AT BEAUMONT

*Arising from:*
**Cause No. 07-11-11972-CR**
IN THE 9TH DISTRICT COURT,
MONTGOMERY COUNTY, TEXAS

---

**STATE'S APPELLATE BRIEF**

---

**BRETT W. LIGON**
District Attorney
Montgomery County, Texas

**BRENT CHAPELL**
Assistant District Attorney
Montgomery County, Texas
T.B.C. No. 24087284
207 W. Phillips, Second Floor
Conroe, Texas 77301
936-539-7800
936-788-8395 (FAX)
brent.chapell@mctx.org

**ORAL ARGUMENT REQUESTED ONLY IF REQUESTED BY APPELLANT**

## IDENTITY OF PARTIES AND COUNSEL

Pursuant to Tex. R. App. P. 38.2, the State hereby supplements the appellant's list of parties to this appeal with the names of all trial and appellate counsel for the State:

| | |
|---|---|
| District Attorney: | **BRETT W. LIGON**<br>District Attorney<br>Montgomery County, Texas<br>207 W. Phillips, Second Floor<br>Conroe, Texas 77301 |
| Counsel for the State in the trial court: | **SYLVIA YARBOROUGH**<br>Former Asst. District Attorney<br>Montgomery County, Texas<br>207 W. Phillips, Second Floor<br>Conroe, Texas 77301 |
| Counsel for the State in the appellate courts: | **BRENT CHAPELL**<br>Assistant District Attorney<br>Montgomery County, Texas<br>207 W. Phillips, Second Floor<br>Conroe, Texas 77301 |

# TABLE OF CONTENTS

IDENTITY OF PARTIES AND COUNSEL ....................................................................... ii

TABLE OF CONTENTS ............................................................................................... iii

STATEMENT OF THE CASE ......................................................................................... 1

STATEMENT OF FACTS ............................................................................................... 2

SUMMARY OF THE STATE'S ARGUMENT ................................................................. 5

REPLY TO POINT OF ERROR ...................................................................................... 6

    A.  The appellant failed to establish Rubenzer's qualifications as to the specific topic of the weapon focus effect. ...................................................... 6

    B.  The appellant failed to establish that the weapon focus effect testimony was reliable in this case. ...................................................... 13

    C.  The appellant bore the burden of establishing the admissibility of Rubenzer's testimony. ...................................................... 16

CONCLUSION AND PRAYER ..................................................................................... 19

CERTIFICATE OF COMPLIANCE WITH RULE 9.4 ................................................... 20

CERTIFICATE OF SERVICE ....................................................................................... 20

# INDEX OF AUTHORITIES

**Cases**

*Blasdell v. State*,
 384 S.W.3d 824 (Tex. Crim. App. 2012) .......................................................... 1, 4, 15

*Blasdell v. State*,
 420 S.W.3d 406 (Tex. App.—Beaumont 2014, pet. granted) ........................... 1, 4, 5, 7

*Blasdell v. State*,
 No. 09-09-00286, 2010 WL 3910586 (Tex. App.—Beaumont Oct. 06, 2010),
 *rev'd*, 384 S.W.3d 824 (Tex. Crim. App. 2012) ......................................... 1, 3, 4

*Broders v. Heise*,
 924 S.W.2d 148 (Tex. 1996) ...................................................................... 8

*Ex parte Blasdell*,
 No. AP-76697, 2011 WL 5903657 (Tex. Crim. App. Nov. 23, 2011) ............................ 1

*Gammill v. Jack Williams Chevrolet, Inc.*,
 972 S.W.2d 713 (Tex. 1998) ...................................................................... 9

*Hernandez v. State*,
 116 S.W.3d 26 (Tex. Crim. App. 2003) ......................................................... 15

*Jordan v. State*,
 928 S.W.2d 550 (Tex. Crim. App. 1996) ....................................................... 14

*Mays v. State*,
 285 S.W.3d 884 (Tex. Crim. App. 2009) ....................................................... 17

*Morris v. State*,
 361 S.W.3d 649 (Tex. Crim. App. 2011) ....................................................... 13

*Nenno v. State*,
 970 S.W.2d 549 (Tex. Crim. App. 1998) ....................................................... 13

*New Jersey v. Henderson*,
 208 A.3d 872 (N.J. 2011) ......................................................................... 15

*Sennett v. State*,
 406 S.W.3d 661 (Tex. App.—Eastland 2013, no pet.) ........................................ 9

*Tillman v. State*,
354 S.W.3d 425 (Tex. Crim. App. 2011) ............................................................... 14, 15

*Vela v. State*,
209 S.W.3d 128 (Tex. Crim. App. 2006) ........................................................... 6, 7, 8, 9

*Weatherred v. State*,
15 S.W.3d 540 (Tex. Crim. App. 2000) ................................................................... 6, 14

*Wyatt v. State*,
23 S.W.3d 18 (Tex. Crim. App. 2000) ......................................................................... 7

**Rules**

Tex. R. App. P. 9.4 .................................................................................................... 20

Tex. R. App. P. 33.1 .................................................................................................. 17

Tex. R. App. P. 38.2 .................................................................................................... ii

Tex. R. Evid. 103 ...................................................................................................... 17

TO THE HONORABLE JUSTICES OF THE COURT OF APPEALS:

## STATEMENT OF THE CASE

The appellant was convicted of aggravated robbery and sentenced to imprisonment for thirty years (C.R. 59–62, 69). On original submission, the Ninth Court of Appeals affirmed the trial court's judgment in an unpublished memorandum opinion. *See Blasdell v. State*, No. 09-09-00286, 2010 WL 3910586 (Tex. App.—Beaumont Oct. 06, 2010) (mem. op., not designated for publication), *rev'd*, 384 S.W.3d 824 (Tex. Crim. App. 2012) (*Blasdell I*). The appellant did not initially file a petition for discretionary review.

However, on November 23, 2011, this Court granted the appellant's application for writ of habeas corpus, allowing the appellant to file an out-of-time petition for discretionary review. *See Ex parte Blasdell*, No. AP-76697, 2011 WL 5903657 (Tex. Crim. App. Nov. 23, 2011) (not designated for publication). After granting discretionary review, this Court reversed the judgment of the Ninth Court of Appeals and remanded the case to that court for further proceedings. *See Blasdell v. State*, 384 S.W.3d 824 (Tex. Crim. App. 2012) (*Blasdell II*).

On remand, the Ninth Court of Appeals again affirmed the judgment of the trial court. *See Blasdell v. State*, 420 S.W.3d 406 (Tex. App.—Beaumont 2014, pet. granted) (*Blasdell III*). This Court granted the appellant's petition for discretionary review on October 15, 2014.

**STATEMENT OF FACTS**

## A.  *The evidence at trial.*

Katy Hadwin stopped at a roadside station to purchase gasoline (3 R.R. 66, 69).  As soon as she stepped out of her car, the appellant approached her and thrust a gun into her face (3 R.R. 70–71, 77–78).  The appellant demanded her belongings, saying, "Give me your fucking purse" (3 R.R. 71).  Hadwin saw that the appellant was clean-shaven with "light-colored eyes and a unibrow" (3 R.R. 71).

Hadwin retrieved her purse from her vehicle and gave it to the appellant, who then walked off toward his truck (3 R.R. 72–73).  Hadwin fled and called her grandfather, who lived nearby, and then called 911 (3 R.R. 68–69, 73–74).  Police instructed Hadwin to return to the gas station, where she provided them with the appellant's description (3 R.R. 13, 16–17, 74–75).

Later that week, Hadwin met with a detective and filled out a suspect description form (3 R.R. 30, 37–38, 55, 76, 80).  Detectives presented Hadwin with a photo spread from which she identified the appellant's picture as being that of the perpetrator (3 R.R. 37–39, 57–58, 77, 80).  Hadwin maintained that she was 100% sure that the appellant was the man who robbed her (3 R.R. 77, 80, 98–99).

The reliability of eyewitness identification became a major issue during trial (4 R.R. 5–70).  To that end, the appellant called Dr. Steven Rubenzer, a forensic

psychologist, to testify (4 R.R. 5–6). One of the scientific theories about which Rubenzer intended to testify was the "weapon focus effect," or the idea that there is a "tendency, when there is a weapon involved, particularly in brief encounters, for the weapon to essentially attract attention away from the perpetrator's face" and "result in lesser accuracy for the identification" (4 R.R. 32). The trial court conducted an extensive voir dire of Rubenzer regarding the various theories to which he proposed to testify. Because Rubenzer could only say that the weapon focus effect was "possibly" a factor in Hadwin's identification of the appellant, the trial court held that such testimony was not reliable and would not assist the jury in determining a fact of consequence (4 R.R. 52–53, 61, 82). The trial court excluded any testimony related to the weapon focus effect but allowed Rubenzer to testify about other confounding factors that can complicate a witness's ability to accurately identify the person who committed the crime, such as suggestive lineups and cross-race identification (4 R.R. 60–61, 82).

## B. Appellate review.

On appeal, the appellant argued that the trial court improperly excluded Rubenzer's testimony regarding the weapon focus effect. *See Blasdell I*, 2010 WL 3910586, at \*2. On original submission, the Ninth Court of Appeals held that Rubenzer "did not commit" to an opinion that the weapon focus effect affected Hadwin's identification of the appellant. *Id.* at \*3. The court of appeals stated that

3

because the appellant did not make a showing that Rubenzer's testimony was "sufficiently tied" to the pertinent facts of the case, the appellant did not meet his burden of showing by clear and convincing evidence that Rubenzer's weapon focus effect testimony was relevant. *Id.* Having disposed of the issue on grounds of relevance, the Ninth Court of Appeals did not reach the question of whether the appellant demonstrated that the weapon focus effect testimony was reliable or whether Rubenzer was qualified to offer such testimony. *Id.* at *2 n.2.

But this Court reversed, holding that Rubenzer's testimony establishing the "possibility" of distorted perception under the circumstances was sufficient to establish a "fit" with the facts of this case, and hence, the relevance of Rubenzer's expert testimony. *See Blasdell II*, 384 S.W.3d at 830–31. The case was remanded to the court of appeals to decide the remaining issues pertaining to the admissibility of Rubenzer's testimony: (1) whether Rubenzer was qualified to give the opinion he did; (2) whether the proffered evidence was sufficiently reliable to be considered by the jury; and (3) whether, if indeed it was error to exclude Rubenzer's testimony regarding the weapon focus effect, the appellant was harmed by that exclusion. *See id.* at 831 n.18.

On remand, the Ninth Court of Appeals hastily disposed of any attack on Rubenzer's qualifications and instead focused its analysis on the reliability of the proffered evidence. *See Blasdell III*, 420 S.W.3d at 410. The court of appeals

4

concluded that the appellant failed to adequately describe the principles behind the weapon focus effect, and the only evidentiary basis to explain those principles came from the mere *ipse dixit* of Rubenzer. *Id.* at 411. Without further information, "the trial court was not in a position to properly evaluate whether Dr. Rubenzer had either properly stated or applied the principles that govern the weapon focus effect" as it relates to the appellant's case. *Id.* Hence, the trial court did not abuse its discretion in excluding Rubenzer's testimony about the weapon focus effect because it was unable to determine whether such testimony was reliable. *Id.*

## SUMMARY OF THE STATE'S ARGUMENT

The court of appeals properly concluded that the appellant failed to demonstrate the reliability of Rubenzer's proffered testimony regarding the weapon focus effect. The evidence presented to the trial court was insufficient to establish Rubenzer's qualifications as an expert in the field, that the weapon focus effect was not junk science, and that Rubenzer's testimony properly relied upon or utilized the principles involved in his field of so-called expertise. In light of the appellant's concession that the current record is insufficient, the trial court's decision to exclude Rubenzer's testimony was not an abuse of discretion.

5

## REPLY TO POINT OF ERROR

The appellant's sole contention is that the Ninth Court of Appeals erred in holding that the trial court did not abuse its discretion when it excluded Rubenzer's testimony regarding the "weapon focus effect" (*see* Appellant's Brief at 7–8). The appellant complains that the trial court did not afford him the opportunity to demonstrate the reliability of Rubenzer's proffered testimony (*see id.*).

Prior to admitting expert testimony, the trial court is required to make three separate inquiries: (1) whether the witness qualifies as an expert by reason of his knowledge, skill, experience, training, or education; (2) whether the subject matter of the testimony is an appropriate one for expert testimony; and (3) whether admitting the testimony will actually assist the factfinder in deciding the case. *See Vela v. State*, 209 S.W.3d 128, 131 (Tex. Crim. App. 2006). These conditions, which the proponent of scientific evidence must establish by clear and convincing proof, are commonly referred to as (1) qualification, (2) reliability, and (3) relevance. *Id.*; *Weatherred v. State*, 15 S.W.3d 540, 542 (Tex. Crim. App. 2000). Because this Court has previously decided that Rubenzer's testimony would be relevant, only the first two conditions are at issue in this case.

## A.    *The appellant failed to establish Rubenzer's qualifications as to the specific topic of the weapon focus effect.*

Although the Ninth Court of Appeals correctly held that the appellant failed to establish the reliability of his proffered testimony regarding the weapon focus

effect, the court's cursory qualification of Rubenzer as an expert bears further examination. *See Blasdell III*, 420 S.W.3d at 410. A witness's qualification to give an expert opinion may be derived from specialized education, practical experience, a study of technical works, or a varying combination of these things. *Wyatt v. State*, 23 S.W.3d 18, 27 (Tex. Crim. App. 2000). "Because the possible spectrum of education, skill, and training is so wide, a trial court has great discretion in determining whether a witness possesses sufficient qualifications to assist the jury as an expert on a specific topic in a particular case." *Vela*, 209 S.W.3d at 136. Absent a clear abuse of that broad discretion, a decision to admit or exclude testimony should not be disturbed. *See Wyatt*, 23 S.W.3d at 27.

In this case, it is uncontested that Rubenzer is qualified to testify as a forensic psychologist, and he is possibly likewise qualified to testify as an expert in the field of eyewitness identification. But the appellant failed to demonstrate Rubenzer's qualification with regard to the weapon focus effect, specifically, or the reliability of its underlying science. This distinction is important because Rubenzer was permitted to testify at length as an expert regarding the shortfalls of eyewitness identification, including the suggestiveness of lineups and cross-race identification. Therefore, Rubenzer's qualification as an expert with respect to the weapon focus effect is of crucial importance in this case.

Qualification is a two-step inquiry. A witness must first have a sufficient background in a particular field, and then the trial court must determine whether that background "goes to the very matter on which [the witness] is to give an opinion." *Vela*, 209 S.W.3d at 131 (quoting *Broders v. Heise*, 924 S.W.2d 148, 153 (Tex. 1996)). Put together, these inquiries require an expert to be sufficiently qualified in the specific topic on which they plan to testify, even if that topic is encompassed within a broader scientific field in which the expert is qualified. *See id.*

Put another way, "the expert's background must be tailored to the specific area of expertise in which the expert desires to testify." *Id.* at 133. In *Broders*, for example, the Texas Supreme Court examined the potential qualification of an emergency physician to testify about the cause-in-fact of a patient's death. *Broders*, 924 S.W.2d at 153. The Court rejected the argument that the physician could testify about "all medical matters" merely because he was a medical doctor, explaining that "there is no validity . . . to the notion that every licensed medical doctor should be automatically qualified to testify as an expert on every medical question." *Id.* To hold otherwise would prevent a trial judge from fulfilling his gatekeeping duty to "ensure that those who purport to be experts truly have an expertise concerning the actual subject about which they are offering an opinion." *Id.* at 152–53; *see also Vela*, 209 S.W.3d at 131–32 (relying on *Broders* in

8

determining proper standard for evaluating expert qualification); *Gammill v. Jack Williams Chevrolet, Inc.*, 972 S.W.2d 713, 719 (Tex. 1998) (holding mechanical engineer was not qualified to testify as expert in automobile-related products-liability suit, despite his extensive background in designing and testing other vehicles and their components).

Likewise, in *Sennett v. State*, 406 S.W.3d 661, 668 (Tex. App.—Eastland 2013, no pet.), the Eleventh Court of Appeals held the proponent failed to establish the qualifications of his proffered forensic expert witness. *See Sennett*, 406 S.W.3d at 668. Although the trial court recognized that computer forensics is a valid area of scientific or technical expertise and that it was relevant to the case, and that the witness was otherwise qualified to discuss the technical aspects of computing, because the defendant failed to establish—via evidence—the expert's qualifications, the trial court was justified in refusing to permit him to testify as an expert with regard to the specific issue of e-mail authenticity. *Id.* at 668–69. Because the "fit" between the subject matter at issue and the expert's familiarity therewith was inadequate, the exclusion of testimony about that specific topic was not an abuse of discretion. *See id.*; *see also Vela*, 209 S.W.3d at 133.

Similar to *Broders* and *Sennett*, while Rubenzer is a qualified forensic psychologist and readily able to discuss the issues on which he was permitted to testify, the appellant simply failed to establish that Rubenzer was qualified to

discuss the weapon focus effect, specifically. As to the area of eyewitness identification, generally, Rubenzer has not published any articles in a peer-reviewed journal and has not conducted any independent research resulting in the collection of data (4 R.R. 14). Rubenzer has developed a so-called expertise in the field via mere self-education, by reading numerous peer-reviewed articles and attending seminars that focused on relevant topics. Despite an extensive voir dire, Rubenzer did not discuss the content he reviewed and did not provide the trial court with any copies of the articles or programs from the symposia.

More importantly, the discussion on the record regarding the weapon focus effect, specifically, is brief and lacks substance. First, defense counsel suggested in an offer of proof that Rubenzer would discuss:

> Weapon focus effect. We have the complaining witness identifying a black revolver. Dr. Rubenzer is familiar with that because that comes out of the offense report. And that's a – from her testimony, we know, that's specific; and this isn't somebody who was a gun nut who can tell us caliber and things like that.

(4 R.R. 19).

Next, during a voir dire examination to determine the admissibility of Rubenzer's testimony, defense counsel questioned Rubenzer:

Q. And let's talk about the weapon focus effect. Can you tell us what that is?

A. Yes. That's a tendency, when there is a weapon involved, particularly in brief encounters, for the weapon to essentially

10

> attract attention away from the perpetrator's face and, by doing so, result in lesser accuracy for identification.

> Q. And pursuant to those exhibits you've examined and in our discussions as far as the offense report, you were aware in your preparation that the complaining witness identified the gun as a black revolver; is that correct?

> A. I didn't hear the term "black." I just heard "revolver."

> Q. Okay. How is that significant to you?

> A. Well, it just indicates that the witness apparently did look at the gun long enough to determine what type of gun it was.

(4 R.R. 32–33).

Rubenzer discussed the topic for the last time when he opined that the weapon focus effect could have "possibly" played a role in this case, which ultimately formed the basis for this Court's prior opinion establishing the relevance of Rubenzer's proffered testimony (4 R.R. 51–52). Other than the trial court's ruling excluding Rubenzer's testimony on the subject (4 R.R. 82), the record's only remaining mention of the weapon focus effect appears in Defendant's Exhibit 2, wherein the phrase appeared in the title of two peer-reviewed articles, and the issue was identified as a topic of discussion at two symposia attended by Rubenzer. Rubenzer did not cite any experiments he had performed on the effect; nor did he

11

provide the trial court with studies on the topic, any symposia he attended,[1] or even any formal training associated with the weapon focus effect.

To be clear, the extent of Rubenzer's training and experience regarding the weapon focus effect, as reflected in the record, is that he read two peer-reviewed articles on the subject, and he heard or viewed two presentations on the topic, which were presented among multiple other topics in a less-than-two-hour period. And the extent of Rubenzer's discussion of the topic and the science behind it, as reflected in the record, is his terse explanation that there is a tendency for a weapon to attract attention away from the perpetrator's face, resulting in lesser accuracy for identification. Granted, it is likely that Rubenzer has further developed his knowledge with respect to the weapon focus effect and that some of his educational materials discussed the topic in some detail, but any evidence of such further qualification is simply absent from the record on which this Court's review is limited.

Consequently, the appellant has failed to establish an adequate "fit" between the subject matter at issue—the weapon focus effect—and Rubenzer's familiarity therewith. Although this Court has previously deemed the topic of the weapon focus effect to adequately "fit" with the facts of this case under the purview of a

---

[1] Rubenzer provided the trial court with the names and locations of symposia he attended, but he did not provide any programs or testimony regarding the substance of those symposia.

relevance analysis, the "fit" question with respect to Rubenzer's qualification to testify about the weapon focus is an independent inquiry. The science may fit the facts of the case, but the science has not been shown to fit the witness's expertise.

Because the appellant failed to meet his burden, the trial court could not have abused its discretion in finding that Rubenzer's qualifications were not sufficiently established, and the cursory analysis by the Ninth Court of Appeals warrants nullification.

**B.**    ***The appellant failed to establish that the weapon focus effect testimony was reliable in this case.***

Even if the Ninth Court of Appeals was correct in finding Rubenzer to be qualified, the appellant is nevertheless not entitled to relief, because the Ninth Court of Appeals was likewise correct in finding that the appellant failed to establish the reliability of Rubenzer's proffered testimony.

In assessing the reliability of expert testimony outside the hard sciences, reviewing courts analyze the testimony according to three considerations: (1) whether the field of expertise is legitimate; (2) whether the subject matter of the testimony is within the scope of that field; and (3) whether the testimony properly relies upon or utilizes the principles involved in the field. *See Morris v. State*, 361 S.W.3d 649, 653 (Tex. Crim. App. 2011) (citing *Nenno v. State*, 970 S.W.2d 549 (Tex. Crim. App. 1998)). The focus on reliability is to determine whether the evidence has its basis in sound scientific methodology and not "junk science." *See*

13

*Tillman v. State*, 354 S.W.3d 425, 435 (Tex. Crim. App. 2011) (citing *Jordan v. State*, 928 S.W.2d 550, 555 (Tex. Crim. App. 1996)). As opposed to relevance, which is by nature a looser notion, reliability demands a certain technical showing. *Jordan*, 928 S.W.2d at 555.

While some science may be recognized as valid, the proponent of scientific evidence must provide the trial court with sufficient evidence of such validation before the exclusion of expert testimony on the topic will constitute an abuse of discretion. For example, in *Weatherred*, this Court considered whether the testimony of Dr. Kenneth Deffenbacher regarding the reliability of eyewitness identifications was admissible over an objection that the underlying science was neither reliable nor relevant. *See Weatherred*, 15 S.W.3d at 542-43. This Court held that because Deffenbacher "failed to produce or even name *any* of the studies, researches, or writings in question," the court of appeals "*could* have reasonably concluded that the appellant failed to carry his burden" of showing the trial court that the proffered expert testimony was reliable and relevant. *Id.* (emphasis in original). This Court recognized the validity of the science to which Deffenbacher proposed to testify, but nevertheless found that the evidence presented to the trial court was insufficient to allow that court to so conclude. *Id.*

Like the evidence presented to establish Rubenzer's qualification, the appellant in this case presented only scant evident with regard to the reliability of

the underlying science. Rubenzer provided the trial court with no titles of any studies, no names of any researchers, nor even the general substance of any writings on the weapon focus effect; and he did not discuss the methodology behind the science. As this Court has recognized, these studies do exist, and courts in other states have held that a properly qualified expert may discuss the weapon focus effect. *See Blasdell II*, 384 S.W.3d at 828 n.3 (citing *Tillman*, 354 S.W.3d at 436–37, which in turn cites *New Jersey v. Henderson*, 208 A.3d 872, 905 (N.J. 2011) (holding that studies have shown an average decrease of 10% in the accuracy of identifications when a weapon is present)). While the New Jersey Supreme Court was able to find testimony regarding the weapon focus effect relevant and reliable after conducting a "meta-analysis of nineteen weapon focus studies that involved more than 2,000 identifications," the appellant in this case presented no such evidence of its reliability to the trial court.

Absent these materials, the trial court was not in the position to determine the reliability of Rubenzer's proffered testimony regarding the weapon focus effect. *See Hernandez v. State*, 116 S.W.3d 26, 32–34 (Tex. Crim. App. 2003) (Keller, P.J., concurring) (discussing limitations on a court's ability to take judicial notice of evidence outside the record to establish an expert's reliability). This Court's reasoning in *Weatherred* compels the conclusion that the appellant did not

meet his burden of establishing that the proffered testimony about the weapon focus effect has its basis in sound methodology.

Furthermore, as the Ninth Court of Appeals correctly concluded, the appellant wholly failed to establish that his proposed testimony properly relied upon or utilized the principles involved in the field. The underlying science behind the weapon focus effect, including the principles involved therein, were never presented to the trial court in the first place. And even if they were, Rubenzer never testified that his proffered testimony regarding the weapon focus effect was derived from, based on, or reliant upon the self-studies he performed in the broad area of eyewitness identification. Rubenzer merely offered a cursory description of the weapon focus effect, his opinion that the effect could have possibly played a role in this case, and a long list of literature that was not shown to discuss the specific topic at issue. This evidence was insufficient to establish by clear and convincing evidence that Rubenzer's opinion properly relied upon or utilized the principles involved in the field of study related to the weapon focus effect. The trial court did not abuse its discretion in excluding that portion of Rubenzer's proffered testimony.

## C. *The appellant bore the burden of establishing the admissibility of Rubenzer's testimony.*

The appellant devotes the majority of his argument to blaming the trial court for failing to sufficiently inquire into the reliability of the proffered testimony

about the weapon focus effect before ruling that it should be excluded (*see* Appellant's Brief at 7–8, 11). But it was the appellant's burden—not the trial court's—to make a sufficient offer of proof to ensure the record was fully developed for appellate purposes. *See* Tex. R. App. P. 33.1(a); Tex. R. Evid. 103(a)(2), (c). The appellant's suggestion that the trial court excluded the proffered testimony solely on the grounds that it was not relevant does not alleviate his duty to make a sufficient bill of exception or offer of proof to fully establish its admissibility in the event that the trial court's reasoning was unsound. *See Mays v. State*, 285 S.W.3d 884, 890–91 (Tex. Crim. App. 2009) ("The primary purpose of an offer of proof is to enable an appellate court to determine whether the exclusion was erroneous and harmful."). Moreover, the record reflects that the State argued against the admission of Rubenzer's testimony under the full standard set forth in Texas Rule of Evidence 702, including both relevance and reliability (4 R.R. 20). The trial court gave no indication that it would not have afforded the appellant the opportunity to make a bill of exception or offer of proof for the purpose of establishing the reliability of the proffered weapon focus effect testimony, had he requested to do so.

The appellant also appears to contend that the trial court must have abused its discretion in excluding the weapon focus effect testimony because it allowed

17

Rubenzer to testify about other topics subsumed within the concept of eyewitness identification despite not having established their reliability:

> The trial court was primarily concerned with relevance and did not make inquiry into reliability. During the hearing, [the appellant] did not establish the reliability of any of the other theories that Dr. Rubenzer testified about, and yet the trial court allowed testimony on those areas of eyewitness identification. During the hearing in the trial court, Dr. Rubenzer did not state or apply the principles that governed any eyewitness identification errors . . . Dr. Rubenzer did no more or no less to describe or explain the scientific principles of weapon focus effect as he did the eyewitness identification errors he was allowed to testify about.

(Appellant's Brief at 11–12). But this argument lacks merit. By merely admitting *some* scientific evidence that has not properly been shown to be reliable, a trial court does not impose upon itself a requirement that it must admit *all* scientific evidence that has not properly been shown to be reliable.

The appellant has essentially admitted that the current record establishes neither Rubenzer's qualification to testify about the weapon focus effect nor the reliability of his proffered testimony on the topic. Given the concededly deficient record, the appellant has failed to properly preserve for appellate review the issues of qualification and reliability with respect to the excluded expert testimony.

In sum, the weapon focus effect may very well be a sound science, and Rubenzer may very well be qualified to testify about the topic, but the appellant simply failed to present the trial court with sufficient evidence to support those conclusions. As a result, this Court should not disturb the trial court's conclusion

18

that Rubenzer's proffered testimony was not shown to be sufficiently reliable, because such a conclusion was soundly within the trial court's discretion based on the evidence made available by the appellant. To hold otherwise would open the door for qualified experts in a wide-encompassing field to testify about any beneficial theory that falls within the purview of that field, regardless of its soundness. The judgments of the trial court and the Ninth Court of Appeals should be affirmed.

## CONCLUSION AND PRAYER

It is respectfully submitted that all things are regular and the judgment of the court of appeals should be affirmed; and in the alternative, that the case be remanded to the court of appeals for a harmless error analysis.

**BRETT W. LIGON**
District Attorney
Montgomery County, Texas


*/s/ Brent Chapell*
**BRENT CHAPELL**
T.B.C. No. 24087284
Assistant District Attorney
Montgomery County, Texas
207 W. Phillips, Second Floor
Conroe, Texas 77301
936-539-7800
936-788-8395 (FAX)
brent.chapell@mctx.org

**CERTIFICATE OF COMPLIANCE WITH RULE 9.4**

I hereby certify that this document complies with the requirements of Tex. R. App. P. 9.4(i)(2)(B) because there are <u>4,201</u> words in this document, excluding the portions of the document excepted from the word count under Rule 9.4(i)(1), as calculated by the MS Word computer program used to prepare it.

/s/ Brent Chapell
**BRENT CHAPELL**
Assistant District Attorney
Montgomery County, Texas

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing instrument was mailed to counsel for the appellant on the date of the submission of the original to the Clerk of this Court.

/s/ Brent Chapell
**BRENT CHAPELL**
Assistant District Attorney
Montgomery County, Texas