PD-0601-15
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 6/24/2015 4:10:13 PM
Accepted 6/25/2015 4:54:10 PM
ABEL ACOSTA
CLERK

CASE NO. PD-0601-15

_____

ON APPEAL FROM CAUSE NO. 12-13-00241-CR

IN THE 12TH COURT OF APPEALS, TYLER, TEXAS

APPEALED FROM CAUSE NO. 9953
258TH JUDICIAL DISTRICT COURT, TRINITY COUNTY, TEXAS

_____

JAMES SCOTT FRELS, Appellant

VS.

THE STATE OF TEXAS, Appellee

_____

**APPELLANT'S PETITION FOR DISCRETIONARY REVIEW**
_____

FILED IN
COURT OF CRIMINAL APPEALS

June 25, 2015

ABEL ACOSTA, CLERK

Albert J. Charanza Jr.
CHARANZA LAW OFFICE, P.C.
P. O. Box 1825
Lufkin, Texas  75902
936/634-8568
936/634-0306 (FAX)
SBN: 00783820

ORAL ARGUMENT REQUESTED

0

# TABLE OF CONTENTS

Identity of All Parties..................................................................................................3

Index of Authorities ................................................................................................4

Statement Regarding Oral Argument ........................................................................6

Statement of the Case...............................................................................................6

Statement of the Procedural History.........................................................................7

Grounds for Review.................................................................................................7

Ground for Review No. 1.........................................................................................8

Does the holding in *Yarbrough v. State* violate due process the Texas Constitution and United States Constitution and Texas law?

Does the failure to instruct the jury on established statutory conditions of supervision of a sex offender violate due process the Texas Constitution and United States Constitution?

Ground for Review No. 2 ......................................................................................16

Did the appellate court err in finding sufficient evidence of "penetration" to support the conviction for aggravated sexual assault of a child?

Ground for Review No. 3.........................................................................................19

Did the appellate court err in finding no err in upholding the admission of the SANE report?

Argument................................................................................................................21

Prayer ....................................................................................................................22

Certificate of Service ............................................................................................23

Certificate of Compliance .....................................................................................24

Appendix ................................................................................................................25

# IDENTITY OF ALL PARTIES

Pursuant to Tex.R.App.P. 55.2(a), the following is a list of parties to the trial court's judgment and the names and addresses of trial and appellate counsel.

1.  James Scott Frels, TDCJ # 01843329  Appellant
    Stiles Unit
    3060 FM 3514
    Beaumont, Texas 77705

2.  Albert J. Charanza, Jr., Counsel for Appellant at trial and appeal
    P.O. Box 1825
    Lufkin Texas 75902
    (936) 634-8568

3.  Bennie Shiro, Counsel for The State of Texas at trial and on appeal
    District Attorney for Trinity County
    P.O. Box 400
    126 W. 1st
    Groveton, Texas 75845
    (936) 642-2401

4.  The Honorable Elizabeth Coker, Trial Judge
    258th Judicial District Court
    P.O. Box 1079
    101 West Mills Street, Suite 286
    Livingston, Texas 77351
    (936) 327-6847

# INDEX OF AUTHORITIES

CASES:                                                                  PAGE

*Yarbrough v. State*, 779 S.W.2d 844 (Tex. Crim. App. 1989) ...............................10

*Yarbrough v. State*, 742 S.W.2d 62, 64 (Tex. App.--Dallas 1987) .........................10

*Brass v. State*, 643 S.W.2d 443 (1982) ......................................................11

*Flores v. State*, 513 S.W.2d 66 (Tex. Crim. App. 1974) .........................................11

*Luquis v. State*, 72 S.W.3d 355, 357 (Tex. Crim. App. 2002)............13,14,15,16, 21

*Jimenez v. State,* 419 S.W.3d 706, 714 (Tex. App.-Houston 2013, pet. ref'd) .......17

*Cornet v. State*, 359 S.W.3d 217, 226 (Tex. Crim. App. 2012) ..............................17

*See Villalon v. State*, 791 S.W.2d 130, 133 (Tex. Crim. App. 1990) ..................17

*Ortiz v. State*, 834 S.W.2d 343, 348 (Tex.Crim.App App. 1992) ..........................19

*Blasdell v. State*, 384 S.W.3d 824, 831 (Tex. Crim. App. 2012) ...........................20

RULES:

TEX. CODE CRIM. PROC. ANN. art. 42.12 § 11 .............................................8, 12

TEX. CODE CRIM. PROC. ANN. art. 37.07 .......................................................9,14

TEX. CODE CRIM. PROC. ANN. art. 37.07 §3(b) ................................................10

TEX. CODE CRIM. PROC. ANN. art. 37.07 §4(a)...........................................13,15

TEX. CODE CRIM. PROC. ANN. art. 36.14 ..............................................9,14, 22

TEX. CODE CRIM. PROC. ANN. § 1.03 (5), 104, 105.......................10,13,14, 22

TEX. CODE CRIM. PROC. ANN. art. 42.12 ......................................................13,14

TEX. CODE CRIM. PROC. ANN. art. 42.12 § 13 (B), (G) ..............................12,13

TEX. CODE CRIM. PROC. ANN. art. 42.12 § 11 ...........................................13,14

TEX. CODE CRIM. PROC. ANN. art. 42.12 § 2, 4 ...............................................13

TEX. CONST. art. I, § 10, 19. ......................................................9,13,14

TEX. CONST. art. I, § 13 ............................................................13, 21

U.S. CONST. amend. V, VI .....................................................9,13,14, 21

U.S. CONST. amend. XIV ..............................................................14

TO THE HONORABLE COURT OF CRIMINAL APPEALS:

Comes now JAMES SCOTT FRELS, by and through his Attorney of Record, and respectfully urges this Court to grant discretionary review of the above named cause, pursuant to the rules of the Texas Court of Criminal Appeals.

## STATEMENT REGARDING ORAL ARGUMENT

Oral argument is requested since the issues on appeal address constitutional issues as raised in this petition.

## STATEMENT OF THE CASE

On September 6, 2012, Defendant was arraigned by the trial court on a four count indictment issued on April 19, 2012 alleging Aggravated Sexual Assault of a Child and Indecency with a Child. (CR 3-5) On February 28, 2013, the trial court granted the State's Motion to Amend Indictment. (CR 22-25) On March 4, 2013, a jury was selected and jury trial began. Frels pled guilty to Count II and not guilty to all other counts. On March 6, 2013, the jury returned a verdict of guilty to Counts I and IV and not guilty to Count III. (CR 47-50, Vol. 5) The jury assessed punishment. (CR 34) Frels was sentenced to twenty (20) years on Count II and seventy-five (75) years on Counts I and IV. (Vol.6, CR 47, 51, 72-73)

On March 26, 2013, Frels filed his Motion for New Trial alleging newly discovered evidence provided by the Trinity County District Attorney's Office regarding a subsequent interview by Silver Choate aka Alice Smith that had not

been disclosed to the defense. (CR 61-63) Silver Choate elected not to use a pseudonym. On May 16, 2013, the trial court denied the Motion for New Trial. (CR 62) On May 24, 2013, Frels filed his Notice of Appeal. (CR 65, 75) On April 22, 2015, the 12th Court of Appeals affirmed the conviction.

## STATEMENT OF PROCEDURAL HISTORY

Scot Frels was charged by indictment with Aggravated Sexual Assault of a Child and Indecency with a Child that allegedly occurred on February 9, 2012. From March 4-6, 2013, a jury trial was held. Frels pled guilty to Count II, Indecency with a Child by Contact and not guilty to all other counts. The jury returned a verdict of guilty to Counts I and IV and not guilty to Count III. The jury assessed punishment and sentenced Frels to prison. On May 16, 2013, the trial court denied the Motion for New Trial. On May 24, 2013, Frels filed his Notice of Appeal. On April 22, 2015, the 12th Court of Appeals affirmed the conviction in an unpublished opinion.

On May 22, 2015, this Court granted an extension to file this petition to June 22, 2015. Frels request the court to grant his motion to extend the deadline by two days and accept his Petition for Discretionary Review.

## GROUNDS FOR REVIEW

Ground for Review No. 1 – Does the holding in *Yarbrough v. State* violate due process the Texas Constitution and United States Constitution and Texas law?

Does the failure to instruct the jury on established statutory conditions of supervision of a sex offender violate due process the Texas Constitution and United States Constitution?

Ground for Review No. 2 – Did the appellate court err in finding sufficient evidence of "penetration" to support the conviction for aggravated sexual assault of a child

Ground for Review No. 3 – Did the appellate court err in finding no err in upholding the admission of the SANE report

## GROUND FOR REVIEW NO. 1

**Does the holding in** *Yarbrough v. State* **violate due process the Texas Constitution and United States Constitution and Texas law?**

**Does the failure to instruct the jury on established statutory conditions of supervision of a sex offender violate due process the Texas Constitution and United States Constitution?**

The Court of Criminal Appeals has not addressed the issue of instructing a jury to include conditions of community supervision in its punishment charge since 1989. The courts of appeal generally hold that an appellant has not directed them to any authority that requires a trial court to include conditions of community supervision in its punishment charge to a jury. *See* TEX. CODE CRIM. PROC. ANN. art 42.12, § 11(a) (stating "[t]he judge may impose any reasonable condition"). A trial court determines what conditions to include and what to leave out in ordering community supervision. *See id.* (stating that "[t]he judge of the court . . . shall determine the conditions of community supervision").

8

However, jury charges in criminal cases are incomplete based on the statutory requirements of Article 37.07, Texas Code of Criminal Procedure, and Article 36.14, Texas Code of Criminal Procedure. Under Article 36.14, the purpose of a charge is to provide the jury with the statutory law applicable to the case to guide them in their deliberations and not expressing any opinion as to the weight of the evidence. "Subject to the provisions of Article 36.07 in each felony case and in each misdemeanor case tried in a court of record, the judge shall, before the argument begins, deliver to the jury, except in pleas of guilty, where a jury has been waived, a written charge distinctly setting forth the law applicable to the case; *not expressing any opinion as to the weight of the evidence*, not summing up the testimony, discussing the facts or using any argument in his charge calculated to arouse the sympathy or excite the passions of the jury." Tex. Code Crim. Proc. art. 36.14. (Emphasis added)

The court, by denying the requested defense punishment instructions, did not provide all the relevant law related to the case since Frels was eligible for community supervision. The charge unfairly was weighted to the jury consider only imprisonment and not consider the factors of community supervision based on the charge submitted. This failure to instruct the jury on the law of community supervision violated Frels right to a fair trial under Articles I, §§ 10 and 19 of the Texas Constitution, the 5th and 6TH amendments of the U.S. Constitution and Texas

9

Code of Criminal Procedure § 1.03(5) (right to a fair and impartial trial), 1.04 (due course of law), 1.05 (rights of the accused). The trial court and appellate court erred in denying the relevant provisions of the law as applied to this case and therefore committed harmful and reversible error.

"After the introduction of such evidence has been concluded, and if the jury has the responsibility of assessing the punishment, the court shall give such additional written instructions as may be necessary and the order of procedure and the rules governing the conduct of the trial shall be the same as are applicable on the issue of guilt or innocence." Tex. Code Crim. Proc. art. 37.07 § 3(b)

In *Yarbrough v. State*, 779 S.W.2d 844 (Tex. Crim. App. 1989), the Court of Criminal Appeals agreed with a decision by the Dallas Court of Appeals that held that the trial court was not required to submit the statutory terms of probation in the jury charge on punishment. *Yarbrough*, 779 S.W.2d at 845 (agreeing with court of appeals that conditions of probation need not be included in jury charge); *Yarbrough v. State*, 742 S.W.2d 62, 64 (Tex. App.--Dallas 1987) (holding trial court was *not* required to submit probation conditions in jury charge), *pet. dism'd, improvidently granted*, 779 S.W.2d 844 (Tex. Crim. App. 1989). In *Yarbrough*, the Court specifically overruled *Brass v. State*, 643 S.W.2d 443 (1982), a prior court of appeals decision that held that an accused is "entitled to have all of the allowable statutory terms and conditions of probation enumerated in the court's

10

charge to the jury upon a proper objection or request." *See Yarbrough*, 779 S.W.2d at 844 (overruling *Brass v. State*, 643 S.W.2d 443 (1982), that held conditions of probation must be included in charge); *see also Brass v. State*, 643 S.W.2d 443, 444 (Tex. App.--Houston [14th Dist.] 1982, pet. ref'd) (finding error where trial court denied defendant's request to submit conditions of probation in jury charge), *overruled by* 779 S.W.2d 845 (Tex. Crim. App. 1989). The court of appeals decision in *Brass* stemmed from its interpretation of *Flores v. State*, 513 S.W.2d 66 (Tex. Crim. App. 1974), where the Court of Criminal Appeals endorsed the enumeration of probationary conditions in the jury charge. *See Flores v. State*, 513 S.W.2d 66, 69 (Tex. Crim. App. 1974) (finding that although "it is considered good practice to enumerate in the court's charge the probationary conditions which the court may impose if probation is recommended by the jury, the failure to so enumerate the said conditions is not harmful to the accused"). Despite this endorsement, it has been argued that no statute or decision requires the trial court to include conditions of probation in the jury charge and trial courts do not err in not providing the conditions of probation be included in the jury charge, nor has fundamental error been shown in this issue on appeal. *Cf. McNamara v. State*, 900 S.W.2d 466, 468 (Tex. App.--Fort Worth 1995, no pet.) (holding that failure to enumerate conditions of probation in charge is not harmful); *Saenz v. State*, 879 S.W.2d 301, 306 (Tex. App.--Corpus Christi 1994, no pet.) (stating that trial court

11

need not inform jury of any conditions of probation in charge); *Herrera v. State*, 848 S.W.2d 244, 248 (Tex. App.--San Antonio 1993, no pet.) (determining that omission of conditions of probation from jury charge is not fundamental error).

During the punishment charge conference, Frels objected to the jury charge for not including all the statutory conditions of community supervision or an intoxication instruction. On March 6, 2013, Frels submitted proposed written detailed jury instructions applicable to the punishment phase regarding the applicable conditions of community supervision in a case involving sex offenders. (CR 35-39, Vol. 6, pp. 66-68, CR 35-39) The court overruled his objections. (Vol. 6, p. 68) Frels was found guilty of a sex offense involving a child and the supervision conditions requested by the Frels were taken from Article 42.12 § 13B and 42.12 § 13G of the Texas Code of Criminal Procedure. These conditions are in addition to the standard basic conditions of community supervision applicable under 42.12, § 11. The court's punishment charge in this case contained neither the standard conditions of supervision under § 11 or the specific sex offender conditions under Article 42.12 § 13B and 42.12 § 13G. Frels listed 24 different conditions that could apply to someone on supervision in for a sex offense against a child. (Vol. 6, p. 66) The charge only provided the statuatory language of community supervision found in 42.12 § 2 and 4 "community supervision shall be granted by the Court if the jury recommend supervision" as required under Article

12

42.12, § 2 and 4.  Since the court was willing to include the provisions of Article 42.12 § 2 and 4, it was reversible error, and an abuse of discretion, to keep out the statutory law under Article 42.12 § 11 and those under §§ 13B and 13G which apply to sex offenders.

The court placed the provisions related under Article 37.07 § 4 relevant to parole but failed to inform the jury about all the potential applications of the law under Article 42.12 as to the conditions of community supervision.  The court committed reversible error by overruling Frels requested written instructions, including the applications for parole and not the potential applications of community supervision.  If the courts in Texas are instructed to provide the jury the law applicable to the case, then the courts need to provide the jury all the statutory law and not just part of the law. *Yarbrough* needs to be overruled or clarified to address the current statutory law in Texas as it applies to punishment in criminal cases.

In *Luquis v. State*, 72 S.W.3d 355, 357 (Tex. Crim. App. 2002), this Court concluded that the parole law charge was not unconstitutional,  and thus it was not error for the trial court to include the legislatively-mandated instruction in its punishment charge.  In this case, Frels argues that it is a violation of a defendant's due process rights as guaranteed under Article 1, § 13 & 19 of the Texas Constitution, the 5th &14th Amendments of the U.S. Constitution and Texas Code

13

of Criminal Procedure § 1.04 by not providing the statutory law under Article 42.12 in a jury charge. It is a fundamental legal precept that no person shall be deprived of life, liberty, or property without due process and due course of law. U.S. CONST. amends. V, XIV; TEX. CONST. art. I, § 19; TEX. CODE CRIM. PROC. ANN. art. 1.04 (Vernon 2014).

By way of example, the constitution of parole law is mandated under Article 37.07 but trial courts ignore, and are not required to provide, the statutory law mandated by Article 42.12 when instructing the jury of the applicable law as required under Article 36.14. It is absurd to require parole law instructions to be given and not provide the law that applies to community supervision. The law is the law. Either provide the jury all the law or none of the law. Clearly, the courts want Texas juries to have all the law. The trial and appellate court erred in not requiring all the law of Texas to be given to the jury in this case. The error was harmful on a constitutional basis because it denied Frels right to a fair trial under Articles I, §§ 10 and 19 of the Texas Constitution, the 5th and 6TH amendments of the U.S. Constitution and Texas Code of Criminal Procedure § 1.03(5) (right to a fair and impartial trial) 1.04 (due course of law), 1.05 (rights of the accused) .

The statutory parole charge, as provided in this case, instructs a jury in very general terms about the existence and possible grant of parole. *Luquis v. State*, 72 S.W.3d 355, 360 (Tex. Crim. App. 2002). The statutory parole charge, Tex. Code

14

Crim. Proc. Ann. art. 37.07, § 4(a), instructs a jury in very general terms about the existence and possible grant of parole. It explicitly informs the jury that persons such as appellant are ineligible for release on parole until they have served one-half of their sentence or thirty years, whichever is less. The instruction also refers to the concept of "good conduct time" and states that a person sentenced to prison might earn some reduction in his period of incarceration (though not a reduction of his sentence) through the discretionary award of good conduct time. The final two paragraphs of the instruction clearly warn the jury that neither they, nor anyone else, can accurately predict how the concepts of "good conduct time" or parole might be applied to any particular person and thus they may not consider how those concepts might apply to the defendant. Id.

In *Luquis v. State*, 72 S.W.3d 355, 357 (Tex. Crim. App. 2002), this Court stated:

> The Texas Legislature enacted legislation that *requires* the trial judge to instruct the jury in the precise wording that the statute recites. Article 37.07, section 4(a) sets out, verbatim, the words that the trial judge is to use. There are even quotation marks around the wording of the instruction. That is at least some indication that the Legislature did not want any creative deviations from its chosen language. The Legislature prefaced its instruction language with directions that "the court *shall* charge the jury in writing as follows: …" The use of the word "shall" generally indicates a mandatory duty. There is no reason to think that the Legislature enacted merely a suggested parole law jury instruction, one that trial judges should cut and paste as they see fit.
> Trial judges, then, are faced with a dilemma. If they do not give the statutorily mandated instruction, they violate the Legislature's law. If they do give the instruction, defendants such as appellant and those similarly situated

15

may claim that portions of the instruction might be misleading and inapplicable to them. Trial judges may occasionally doubt the wisdom of a particular law, but they are not free to ignore explicit legislative directions unless those directives are clearly unconstitutional. Therefore, because the trial judge in this case instructed the jury according to the legislative dictate expressed in article 37.07, section 4(a), he did not commit error.

The legislatively mandated instruction informs the jury about parole and good conduct time generally, but it also explicitly tells them not to consider the manner in which the parole law or good conduct time might be applied to this particular defendant. *Luquis v. State*, 72 S.W.3d 355, 364 (Tex. Crim. App. 2002)

The purpose of a criminal jury charge is to give the jury the statutory law applicable to the case to guide them in their deliberations. The court, by denying the written requested instructions, did not provide all the relevant law related to the case since Frels was eligible for community supervision. The charge in this case was unfairly weighted to the jury considering only imprisonment and not considering the factors of community supervision based on the charge submitted by the court. The court erred in denying the relevant provisions of the law as applied to this case and therefore committed harmful reversible error.

## GROUND FOR REVIEW NO. 2

**Did the appellate court err in finding sufficient evidence of "penetration" to support the conviction for aggravated sexual assault of a child**

The issue in this case was whether penetration occurred was contested. Silver Choate testified that Frels was not just touching her with his "thingy," but

16

was "pushing it" while on top of her, and that he was trying to "push his thing into [her] private part." When asked why he stopped, she replied, "[H]e said it wouldn't go in." However, she testified that he tried "to push his thing in" for a couple of minutes. Frels was unable to achieve an erection and could not penetrate the victim's sexual organ. The appellate court noted that "[t]hough penetration is an element of aggravated sexual assault, erection is not." *Jimenez v. State,* 419 S.W.3d 706, 714 (Tex. App.—Houston [1st Dist.] 2013, pet. ref'd). Citing *Cornet v. State*, 359 S.W.3d 217, 226 (Tex. Crim. App. 2012), "penetration" of the female sexual organ occurs when there is "tactile contact beneath the fold of complainant's external genitalia." The act of "pushing aside and reaching beneath a natural fold of skin into an area of the body not usually exposed to view, even in nakedness, is a significant intrusion beyond mere external contact" and constitutes penetration for purposes of the sexual assault statute. *Id.* Contact regarded as more intrusive than contact with the victim's outer vaginal lips amounts to penetration of the female sexual organ. *Id.* Although the state may prove penetration by circumstantial evidence, and the victim need not testify as to penetration, the evidence must prove penetration beyond a reasonable doubt. *See Villalon v. State*, 791 S.W.2d 130, 133 (Tex. Crim. App. 1990)

Frels "tried to insert [his] penis into her vagina, but could not get it in." He said he "was too drunk to get a full erection," but that he was "semi-erect." He also

17

admitted in the second statement that he "rubbed the lips of her vagina." In contrast, at trial, he testified that he was totally unable to obtain an erection, even though he admitted to placing a condom on his penis. Specifically, Frels testified that he "got her in the missionary position and attempted to penetrate her and due to [his] intoxication [he] just was flaccid and could not do anything." This contradicts his second written statement in which he stated that he was "semi-erect."

Emily May, the nurse conducting a Sexual Assault Nurse Examination (SANE), testified she observed redness and abrasions in the "left exterior facet" of the victim's sexual organ, along with two hymeneal tears. The location of the tears in the hymen indicated they occurred while the patient was lying in a supine position. She also testified that in order for there to be injuries to the hymen, something would have to penetrate the labia. She indicated that the injuries were recent; however she could not determine when or how the physical observations occurred. She also opined that the injuries were consistent with penetration by a penis, and the penis must be erect in order to cause the injuries suffered which was not consistent with the testimony at trial. Additionally, May confirmed that the injuries *could have occurred from self-exploration* and that no other sexual trauma was noted.

Based on Frels and Choate's testimony, penetration did not occur. The testimony did not support the element of penetration. The appellate court erred in holding that "the jury could have rationally concluded that Appellant's sexual organ had tactile contact beneath the fold of the victim's external genitalia, that the contact was more intrusive than contact with the victim's outer vaginal lips, and that he pushed aside and reached beneath a natural fold of skin into an area of the body not usually exposed to view. Consequently, the jury could have rationally concluded that Appellant penetrated the victim's sexual organ." The court of appeals is assuming facts not in evidence in the trial of this case. Choate's testimony does not support the court's opinion and it is reversible error since the element of penetration was not proven beyond a reasonable doubt.

## GROUND FOR REVIEW NO. 3

### Did the appellate court err in finding no err in upholding the admission of the SANE report

In this case, the issue of penetration was hotly contested. Frels filed a pretrial written objection to the SANE report as inadmissible hearsay because the SANE report checked off a box of the report indicating penetration. The appellate court, citing *Ortiz v. State*, 834 S.W.2d 343, 348 (Tex.Crim.App App. 1992), opined that the report was allowed under the Rules of Evidence as an expert report. The SANE nurse, Emily May, testified. The appellate court also opined the objection to the SANE report was not preserved. Frels filed a written pretrial

19

objection that was overruled by the court.  During the trial, Frels counsel pointed to the specific objectionable portion of the SANE record relating to penetration which was overruled. (Vol. 4, p. 43)  Given the content of the expert testimony, the context in which it was offered, and, most pertinently, the lack of other evidence to establish penetration by the defendant, the appellate court erred in concluding that this opinion was not objectionable.  Not all expert testimony that is logically "relevant" will invariably serve to "assist" a jury for purposes of Rule 702. *Blasdell v. State*, 384 S.W.3d 824, 831 (Tex. Crim. App. 2012).  "A judicious application of the Rule 702 helpfulness standard and Rule 403 balancing factors is necessary. Such determinations must necessarily be resolved on a case-by-case basis, as they will depend upon factors such as the content of the testimony, the context in which it is offered, and the state of the evidence." Id.   In *Blasdell v. State*, 384 S.W.3d 824, 826 (Tex. Crim. App. 2012), this Court held the court of appeals erred in concluding that the forensic psychologist's weapon focus effect testimony was not relevant to the issues in the case.  *Blasdell v. State*, 384 S.W.3d 824, 826 (Tex. Crim. App. 2012) As the quantity and quality of evidence establishing a defendant's identity as the perpetrator of the charged offense increases, the possibility that expert testimony will facilitate the jury's resolution of a contested issue related to the charge that issue will decrease concomitantly. At some point, a trial court may decide that the expert testimony is, on balance, insufficiently

helpful to the jury's resolution of the issue to justify the time and resources it would take to present it at trial. Such a decision under Rule 702 would fall squarely within the zone of reasonable disagreement. Id.

In this case, the decision of whether penetration occurred with a flaccid penis was to be determined from the testimony of the fact witnesses, Silver Choate and Scott Frels. It was reversible error to admit State's Exhibit 6, the SANE report over defendant's objection.

## ARGUMENT

Since 1989, the appellate courts have followed the Court of Criminal Appeals affirmation that instructing a jury to include conditions of community supervision in its punishment charge should not be included. However, in 2002, in *Luquis v. State*, 72 S.W.3d 355, 357 (Tex. Crim. App. 2002), this court mandate that parole be given to the jury in the punishment phase of a trial. The trial court, by denying Frels requested defense punishment instructions, did not provide all the relevant law related to the case since Frels was eligible for community supervision. The charge unfairly was weighted to the jury consider only imprisonment by emphasizing the applicable parole law and not consider the law and factors of community supervision based on the charge submitted. This failure to instruct the jury on Texas law of community supervision violated Frels right to a fair trial under Articles I, §§ 10 and 19 of the Texas Constitution, the 5th and 6TH

21

amendments of the U.S. Constitution and Texas Code of Criminal Procedure § 1.03(5) (right to a fair and impartial trial), 1.04 (due course of law), 1.05 (rights of the accused).

The courts of appeal have been erring in holding that appellants have not directed them to any authority that requires a trial court to include conditions of community supervision in its punishment charge to a jury. Frels has established that under Article 36.14, the purpose of a charge is to provide the jury with the statutory law applicable to the case to guide them in their deliberations and not expressing any opinion as to the weight of the evidence. *Yarbrough v. State* violates due process as guaranteed under the Texas Constitution, United States Constitution and Texas law and emphasizes parole law over the law of community supervision. The failure to instruct the jury on established statutory conditions of supervision of a sex offender violates due process the Texas Constitution and United States Constitution and Frels suffered harmful error in not having his requested instructions.

## **PRAYER FOR RELIEF**

WHEREFORE, Appellant prays the Court of Appeals grant this petition for Discretionary review and this Court reverse the decision of the Court of Appeals.

Respectfully submitted,

*/s/Albert J. Charanza, Jr.*
ALBERT J. CHARANZA, JR.
CHARANZA LAW OFFICE, P.C.
P.O. Box 1825
Lufkin, Texas 75902
936-634-8568
936-634-0306 (fax)
State Bar No. 00783820
Attorney for James Scott Frels

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this day June 24, 2015 the Petition for Discretionary Review was filed electronically with the Clerk of the Court of Criminal Appears at Court of Criminal Appeals Of Texas, P.O. Box 12308, Capitol Station, Austin, Texas 78711 for filing and handling in that Court pursuant to Tex.R.App.P. 68.7 of the Texas Rules of Appellate Procedure.

(2) Pursuant to Tex.R.App.P. 68.11, a legible copy of said petition has been mailed by U.S. Mail to:


LISA MCMINN
STATE PROSECUTING ATTORNEY
P.O. BOX 13046
AUSTIN, TEXAS 78711

BENNY SHIRO
DISTRICT ATTORNEY
TRINITY COUNTY
P.O. BOX 400
GROVETON, TEXAS 75845

*/s/Albert J. Charanza, Jr.*
ALBERT J. CHARANZA, JR.
CHARANZA LAW OFFICE, P.C.

## CERTIFICATE OF COMPLIANCE

I certify that this document contains 4,277 words, counting all parts of the document except those excluded by Tex. R. App. P. 9.4(i)(1). The body text is in 14 point font.

/s/Albert J. Charanza, Jr.
ALBERT J. CHARANZA, JR.
CHARANZA LAW OFFICE, P.C.

**APPENDIX**

1. Memorandum Opinion Issued on April 22, 2015.

# NO. 12-13-00241-CR

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *JAMES SCOTT FRELS,*<br>*APPELLANT* | § | *APPEAL FROM THE 258TH* |
| *V.* | § | *JUDICIAL DISTRICT COURT* |
| *THE STATE OF TEXAS,*<br>*APPELLEE* | § | *TRINITY COUNTY, TEXAS* |

## *MEMORANDUM OPINION*

James Scott Frels appeals his convictions and sentences for aggravated sexual assault of a child and his sentence for indecency with a child. He raises six issues on appeal. We affirm.

## BACKGROUND

Appellant met the victim's mother on an online dating site. After a two and a half month period of social interaction, Appellant took the victim and her mother to a bar. While at the bar, Appellant paid for several alcoholic beverages that all three of them drank. Appellant's adult son, who resided at Appellant's home at the time, later arrived at the bar. He drank only one beer while there. The group decided to leave, and Appellant drove the victim and her mother to his home. Appellant's son returned to the home in his own vehicle. The exact events that occurred next were disputed, but it is undisputed that Appellant committed sexual acts with the thirteen year old victim in his bedroom. The next day, Appellant's son, a witness to the events, reported his father's conduct to law enforcement. Later that day, Appellant voluntarily provided two written statements within a three hour period. In the first statement, Appellant admitted no wrongdoing. In the second, he admitted engaging in sexual acts with the victim. The officers subsequently arrested Appellant.

A grand jury charged Appellant in a four count indictment for various sexual acts with the victim. Specifically, Appellant was indicted for indecency with a child through sexual contact by touching the child's genitals, a second degree felony as alleged (count two). The remaining three counts alleged that Appellant committed the first degree felony offense of aggravated sexual assault of a child under the age of fourteen by penetrating the child's sexual organ with his sexual organ (count one), causing the sexual organ of the child to contact his mouth (count three), and causing the sexual organ of the child to contact Appellant's sexual organ (count four).

Just as Appellant's jury trial began, he pleaded guilty to the indecency with a child allegation in count two. The trial proceeded on the three aggravated sexual assault offenses. The jury found Appellant guilty of counts one and four, and not guilty of count three. After a punishment hearing, the jury sentenced Appellant to twenty years of imprisonment and a $10,000.00 fine on count two, and seventy-five years of imprisonment with no fine on counts one and four respectively. The trial court ordered that all sentences be served concurrently. Appellant filed a motion for new trial alleging that the victim, in a posttrial interview, stated for the first time that Appellant and the victim had an additional sexual encounter prior to the date alleged in the indictment. After a hearing, the trial court denied the motion. This appeal followed.

INSUFFICIENT EVIDENCE OF PENETRATION

In his fourth issue, Appellant argues that the evidence is insufficient to support a finding that he penetrated the victim's sexual organ as alleged in count one of the indictment.

**Standard of Review**

In reviewing the sufficiency of the evidence, the appellate court must determine whether, considering all the evidence in the light most favorable to the verdict, the jury was rationally justified in finding guilt beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789, 61 L. Ed. 2d 560 (1979); *Brooks v. State*, 323 S.W.3d 893, 899 (Tex. Crim. App. 2010). The duty of a reviewing court is to ensure that the evidence presented actually supports a conclusion that the defendant committed the crime charged. *See Williams v. State,* 235 S.W.3d 742, 750 (Tex. Crim. App. 2007).

Considering the evidence "in the light most favorable to the verdict" under this standard requires the reviewing court to defer to the jury's credibility and weight determinations, because the jury is the sole judge of the witnesses' credibility and the weight to be given their testimony. *Brooks*, 323 S.W.3d at 899; *see Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789. This familiar standard gives full play to the responsibility of the trier of fact to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from the basic facts to ultimate facts. *See Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789. "[A] court faced with a record of historical facts that supports conflicting inferences must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Id.*, 443 U.S. at 326, 99 S. Ct. at 2793. Circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor and can alone be sufficient to establish guilt. *Hooper v. State,* 214 S.W.3d 9, 13 (Tex. Crim. App. 2007).

**Applicable Law**

To satisfy the elements of aggravated sexual assault of a child as alleged in count one of the indictment, the State was required to prove that Appellant intentionally or knowingly penetrated the sexual organ of the victim, a child under fourteen at the time, with his sexual organ. *See* TEX. PENAL CODE ANN. § 22.021(a)(1)(B)(i), (a)(2)(B) (West Supp. 2014).

Within the context of sexual assault, "penetration" of the female sexual organ occurs when there is "tactile contact beneath the fold of complainant's external genitalia." *Cornet v. State*, 359 S.W.3d 217, 226 (Tex. Crim. App. 2012). The act of "pushing aside and reaching beneath a natural fold of skin into an area of the body not usually exposed to view, even in nakedness, is a significant intrusion beyond mere external contact" and constitutes penetration for purposes of the sexual assault statute. *Id.* Contact regarded as more intrusive than contact with the victim's outer vaginal lips amounts to penetration of the female sexual organ. *Id.*

The state may prove penetration by circumstantial evidence, and the victim need not testify as to penetration. *See Villalon v. State*, 791 S.W.2d 130, 133 (Tex. Crim. App. 1990); *Murphy v. State*, 4 S.W.3d 926, 929 (Tex. App.—Waco 1999, pet. ref'd). Evidence of the slightest penetration is sufficient to uphold a conviction, so long as it is shown beyond a reasonable doubt. *Luna v. State*, 515 S.W.2d 271, 273 (Tex. Crim. App. 1974).

**Discussion**

Appellant argues that the evidence is insufficient to support the jury's finding that he penetrated the victim's sexual organ with his sexual organ. The evidence, viewed in the light most favorable to the verdict, shows that a few weeks before the incident, the victim's mother mentioned to the victim that she should have sex with someone experienced rather than someone who would hurt her. The mother suggested that Appellant should be that person. At the bar on the night of the offenses, Appellant and the victim's mother ordered approximately sixteen beers, six "Jell-O shots," and five "Smirnoff" malt beverages on Appellant's credit card. The victim, a thirteen year old female, consumed all of the malt beverages. The victim testified that while at the bar, Appellant showed her his cell phone, which contained an unsent text message stating, "If you stay the night, I want you."

The victim testified further that her mother briefly passed out after they returned to Appellant's home, and that Appellant grabbed the victim by the arm and took her to his bedroom where they began engaging in sexual activities. Appellant's son, who was present at the house at the time, testified that Appellant's dog opened the door to the bedroom. Appellant's son observed that a light was on, and he saw his father, nude, on top of the victim, who was also nude. He stated that he could not see actual penetration, but that he heard the victim ask Appellant to "take it out. It hurts." He testified that Appellant was in between the victim's legs and her legs were around him at the time.

The victim testified that Appellant was not just touching her with his "thingy," but was "pushing it" while on top of her, and that he was trying to "push his thing into [her] private part." When asked why he stopped, she replied, "[H]e said it wouldn't go in." However, she testified that he tried "to push his thing in" for a couple of minutes.

The nurse conducting the Sexual Assault Nurse Examination (SANE) testified at trial that she examined the victim the day after the offenses took place. She testified that she observed redness and abrasions in the "left exterior facet" of the victim's sexual organ, along with two hymenal tears. In her written report, the SANE nurse noted that it was too painful for the victim to accommodate the speculum in her vagina as part of her exam, and that there was also redness and an abrasion to the perineum on her "posterior fourchette." She testified that the location of the tears in the hymen indicated they occurred while the patient was lying in a supine position. She also testified that in order for there to be injuries to the hymen, something would have to

4

penetrate the labia. She indicated that the injuries were recent because the tissues were red and tender to the touch, and there was no "rejuvenation tissue" present. She also opined that the injuries were consistent with penetration by a penis, and the penis must be erect in order to cause the injuries suffered.

Appellant points to his written statements and his testimony, along with similar testimony from the victim, that he was unable to achieve an erection and could not penetrate the victim's sexual organ. We note that "[t]hough penetration is an element of aggravated sexual assault, erection is not." *Jimenez v. State*, 419 S.W.3d 706, 714 (Tex. App.—Houston [1st Dist.] 2013, pet. ref'd). Turning to his written statements, Appellant denied any wrongdoing in his first statement. He admitted in his second statement, which was voluntarily given approximately three hours after his first statement, that he "tried to insert [his] penis into her vagina, but could not get it in." He said he "was too drunk to get a full erection," but that he was "semi-erect." He also admitted in the second statement that he "rubbed the lips of her vagina." In contrast, at trial, he testified that he was totally unable to obtain an erection, even though he admitted to placing a condom on his penis. Specifically, Appellant testified that he "got her in the missionary position and attempted to penetrate her and due to [his] intoxication [he] just was flaccid and could not do anything." This contradicts his second written statement in which he stated that he was "semi-erect." It is within the province of the jury as factfinder to resolve conflicts in the testimony and the evidence. *See Jackson,* 443 U.S. at 319, 326, 99 S. Ct. at 2789, 2793. Given the evidence it heard, the jury could have disbelieved Appellant's testimony at trial that he was unable to penetrate the victim.

Finally, Appellant also points to the lack of DNA testing on buccal swabs taken from the victim, but the victim and Appellant both testified that he used a condom. It does not appear from the record that the authorities recovered the condom used in the incident. The SANE nurse concluded that DNA testing was unlikely to be helpful because Appellant used a condom. The jury could have reasonably inferred that the fact that Appellant used a condom precluded the recovery of useful DNA evidence that could exonerate him.

Based on the evidence, the jury could have rationally concluded that Appellant's sexual organ had tactile contact beneath the fold of the victim's external genitalia, that the contact was more intrusive than contact with the victim's outer vaginal lips, and that he pushed aside and reached beneath a natural fold of skin into an area of the body not usually exposed to view.

Consequently, the jury could have rationally concluded that Appellant penetrated the victim's sexual organ. *See Cornet*, 359 S.W.3d at 226.

Appellant's fourth issue is overruled.

## ADMISSIBILITY OF SANE EXAM

In his third issue, Appellant contends that the SANE report was inadmissible hearsay, a portion of the report invaded the province of the jury, and the report also improperly bolstered the victim's testimony.

### Standard of Review

A trial court's decision to admit evidence over an objection is reviewed for abuse of discretion. *McCarty v. State*, 257 S.W.3d 238, 239 (Tex. Crim. App. 2008). If the decision of the trial court is within the zone of reasonable disagreement and was correct under any theory of law applicable to the case, it will be upheld on appeal. *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1990).

### Applicable Law

To preserve a complaint for appellate review, the complaining party must have presented a specific and timely request, motion, or objection to the trial court and, further, must have obtained an adverse ruling. *See* TEX. R. APP. P. 33.1. The complaint on appeal must comport with the complaint made at trial. *Lovill v. State*, 319 S.W.3d 687, 691–92 (Tex. Crim. App. 2009).

An "invading the province of the jury" objection is no longer recognized as a valid objection to opinion testimony. *Ortiz v. State*, 834 S.W.2d 343, 348 (Tex. Crim. App. 1992); *Mock v. State*, 848 S.W.2d 215, 225 (Tex. App.—El Paso 1992, pet. ref'd); *see also* TEX. R. EVID. 704. "The doctrine which prohibited testimony that would invade the province of the jury 'is and has been long dead' as a proposition of law." *Mays v. State*, 563 S.W.2d 260, 263 (Tex. Crim. App. 1978) (quoting *Boyde v. State*, 513 S.W.3d 588, 590 (Tex. Crim. App. 1974)).

### Discussion

In the first part of this issue, Appellant argues that the trial court improperly admitted the SANE report under the hearsay exceptions for business records and for statements made for purposes of medical diagnosis or treatment. *See* TEX. R. EVID. 803(4), (6) (medical diagnosis or treatment and business records exceptions to hearsay rule). He contends that the exam was

conducted for investigatory purposes rather than for diagnosing or treating a medical condition of the victim. Appellant did not raise this objection at trial. However, he filed a pretrial written objection to the report on these grounds, but failed to secure a ruling on his objection. Consequently, Appellant waived this portion of his third issue, and we do not address it. *See* TEX. R. APP. P. 33.1(a)(2)(A).

In the second component of this issue, Appellant contends that the SANE nurse's opinion, as expressed in her written report stating, "'Was there penetration?' And it's checked off: 'Female sexual organ[,]'" invaded the province of the jury because it was an opinion on the ultimate issue to be decided by the jury. The fact that the nurse, in her report, states that there was penetration is not objectionable on this ground, because the rules of evidence permit opinion testimony on ultimate issues of fact. *See* TEX. R. EVID. 704; ***Ortiz***, 834 S.W.2d at 348.

In the final component of his third issue, Appellant contends that "[w]hen a sexual abuse examination is at issue, and there is no physical evidence of abuse, the testimony of the sexual assault examiner can only be seen as an attempt to directly bolster the credibility of the complainant and a direct comment on the complainant's truthfulness." *See **Salinas v. State***, 166 S.W.3d 368, 371 (Tex. App.—Fort Worth 2005, pet. ref'd). Consequently, his argument continues, the portion of the SANE nurse's report indicating that the victim's sexual organ was penetrated is an improper comment on the victim's truthfulness. We note that Appellant did not object to the report or the nurse's testimony on this ground. His only objection was that it "invaded the province of the jury." In other words, the argument made on appeal does not comport with the objection he made at trial, and therefore he has failed to preserve it. *See **Lovill***, 319 S.W.3d at 691–92 (Tex. Crim. App. 2009).

But even if we were to review that portion of this issue, Appellant has not demonstrated reversible error. While we agree with the general statement of law relied upon by Appellant in ***Salinas***, it is inapplicable here. ***Salinas*** is predicated on an absence of evidence of physical abuse. ***Salinas***, 166 S.W.3d at 370-71. There, the nature of the alleged abuse left no physical evidence. ***Id.*** at 370. Nevertheless, the trial court allowed the examining physician to testify that the victim was sexually assaulted solely on the basis of the child's statements to the physician. ***Id.*** The court held that "[b]ecause there was no [physical evidence of sexual abuse], [the physician's] testimony can only be seen as an [improper] attempt to directly bolster the credibility of the complainant and a direct comment on the complainant's truthfulness." ***Id.*** at

7

371.  In this case, we have already described ample evidence of the sexual assaults, including the physical evidence of penetration from the SANE nurse's testimony and report, along with Appellant's own admissions of his attempts to sexually assault the victim.  For that reason, the holding in *Salinas* is inapplicable to the facts of the present case.

Appellant's third issue is overruled.

## IMPROPER CLOSING ARGUMENT

In his second issue, Appellant argues that the prosecutor improperly injected facts not in evidence during the closing argument on punishment and that he went outside the scope of permissible argument.

### Standard of Review

We review a trial court's ruling on an objection to improper jury argument for abuse of discretion.  *See Garcia v. State*, 126 S.W.3d 921, 924 (Tex. Crim. App. 2004).  To preserve error in cases of improper prosecutorial argument, the defendant must, until he receives an adverse ruling, (1) make a timely and specific objection; (2) request an instruction that the jury disregard the matter improperly placed before the jury; and (3) move for a mistrial.  *Cockrell v. State*, 933 S.W.2d 73, 89 (Tex. Crim. App. 1996); *Cook v. State*, 858 S.W.2d 467, 473 (Tex. Crim. App. 1993).

### Applicable Law

The law provides for, and presumes, a fair trial free from improper argument by the prosecuting attorney.  *Long v. State*, 823 S.W.2d 259, 267 (Tex. Crim. App. 1991).  Permissible jury argument falls into one of four areas: (1) summation of the evidence; (2) reasonable deduction from the evidence; (3) an answer to the argument of opposing counsel; or (4) a plea for law enforcement.  *Brown v. State*, 270 S.W.3d 564, 570 (Tex. Crim. App. 2008); *Cannady v. State*, 11 S.W.3d 205, 213 (Tex. Crim. App. 2000).

Counsel is generally given wide latitude in drawing inferences from evidence as long as they are reasonable, fair, legitimate, and offered in good faith.  *See Gaddis v. State*, 753 S.W.2d 396, 398 (Tex. Crim. App. 1988).  It is improper for the state to argue that the community expects a certain verdict or punishment.  *See Borjan v. State*, 787 S.W.2d 53, 56 (Tex. Crim. App. 1990).  The state may, however, request the jury to represent or be the voice of the community when reaching its verdict.  *See Cortez v. State*, 683 S.W.2d 419, 421 (Tex. Crim.

8

App. 1984).  The state may also properly remind the jury that its decision can reflect a desire for strong law enforcement.  *See **Goocher v. State***, 633 S.W.2d 860, 864–65 (Tex. Crim. App. 1982).

A plea for law enforcement is proper argument and may take many forms, including arguments that draw on the jury verdict's impact on the deterrence of crime in general and the community at large.  ***Borjan***, 787 S.W.2d at 55–56 (observing that state may argue that jury should deter specific crimes by its verdict); ***Nelson v. State***, 881 S.W.2d 97, 102 (Tex. App.—Houston [1st Dist.] 1994, pet. ref'd).  Moreover, matters of common knowledge may be incorporated into final argument without express support in the evidence.  ***Carter v. State***, 614 S.W.2d 821, 823 (Tex. Crim. App. [Panel Op.] 1981).

Even when an argument exceeds the permissible bounds of proper argument, it is not reversible unless the argument is extreme or manifestly improper, violates a mandatory statute, or injects into the trial new facts harmful to the accused.  ***Wesbrook v. State***, 29 S.W.3d 103, 115 (Tex. Crim. App. 2000).  The remarks must have been a willful and calculated effort on the part of the state to deprive Appellant of a fair and impartial trial.  ***Id.*** (citing ***Cantu v. State***, 939 S.W.2d 627, 633 (Tex. Crim. App. 1997)).  In determining whether improper jury argument warrants a mistrial, we balance three factors: (1) severity of the misconduct (the magnitude of the prejudicial effect of the prosecutor's remarks); (2) measures adopted to cure the misconduct (the efficacy of any cautionary instruction by the judge); and (3) the certainty of conviction absent the misconduct (the strength of the evidence supporting the conviction). ***Mosley v. State***, 983 S.W.2d 249, 259 (Tex. Crim. App. 1998).

**Discussion**

Appellant points to several statements by the prosecutor during the punishment phase that he alleges are improper argument warranting a new trial.  First, he alleges the argument that Appellant and the victim's mother planned the sexual conduct is the injection of a new fact unsupported by the record.  The evidence admitted at trial shows that this statement is both a summation of the evidence and a reasonable deduction from the evidence.  As we have stated, the victim testified that a few weeks before the sexual assaults, her mother brought up the topic of sex and stated "better you do it with someone experienced than somebody that will hurt you." She testified that her mother told her Appellant should be that person.

9

On the night of the offenses, the victim's mother actively assisted in her daughter's intoxication. While the offenses occurred, Appellant's son asked the victim's mother why she let this happen, and in response, she tried to "calm [him] down." Moreover, he testified that the victim's mother was aware of the conduct, watched from the doorway as it occurred, and did nothing to stop it. One of the investigating officers testified that the victim's mother was arrested for endangering a child, and that he subsequently filed an additional charge against her for sexual performance of a child.

The victim testified at trial that her mother knew she was going into Appellant's room. She also stated that her mother entered Appellant's bedroom at or near the time the sexual acts happened or just as they concluded. Her mother got in the bed with her clothes off. Also, the victim testified that her mother asked her the morning after, without the victim's raising it, whether Appellant "put his thingy in [her]." The victim replied "yes, but no." She clarified that "yes, [he put his thingy inside,] but he said he didn't." Similarly, the SANE notes indicate that the victim said that her mother "came in and got in bed with [them as the sexual acts concluded]. [Appellant and the victim's mother] started moving around. So [the victim] got up and went to sleep on the couch."

Finally, in Appellant's first written statement, he said that Appellant's son told him the following day that the victim's mother watched through the door and asked his son to just "let it happen."[1] The jury could reasonably infer from all this evidence that Appellant and the victim's mother planned the encounter, which is a fair summation of the evidence and therefore a permissible basis for jury argument.

Next, Appellant argues that the prosecutor improperly injected facts not in evidence by referring to a cable television program filmed in Trinity County, entitled *Fat Cops*, which humorously documents the daily lives of the City of Trinity's residents and its police officers. The trial court sustained his objection, but Appellant did not request an instruction to disregard the comment or move for a mistrial. Consequently, he has waived this component of his second issue. *See Cockrell*, 933 S.W.2d at 89.

Even if we were to address this portion of his second issue, we would conclude that it was a proper plea for law enforcement. When reading the record as a whole, it is clear that the

---

[1] Although Appellant acknowledged that his son told Appellant that he saw them having sex, Appellant denied having sex with the victim.

10

prosecutor used this reference to the program to compare the comedic nature of it with what he believed to be lax enforcement of sex crimes laws in the Trinity County area. The prosecutor urged the jury, who likely was aware of the program, that it should refrain from allowing the proceedings to become an episode of the show, and that it should enforce the law and levy a severe punishment. As we have stated, a plea for law enforcement can take many forms. *See Borjan*, 787 S.W.2d at 55–56. We cannot conclude that the prosecutor's statements were improper argument.

Similarly, Appellant contends that the prosecutor acted improperly when he argued that he did not sleep well during the trial because he has worked hard and has "done everything [he] could do." He argues that this is a plea for empathy in that the prosecutor asked the jury to assess a strict punishment because the prosecutor worked hard on presenting the case to them. However, read in context, the prosecutor further explained that he would sleep well the night that the trial concluded, because he fully presented his case, it was now in the jury's hands, and it was the jury's responsibility to administer justice. The prosecutor continued that justice should be achieved "for this victim in this case and also let's punish this guy for what he did." In the context in which it was made, the prosecutor's statement is a proper plea for law enforcement.

Finally, even if the trial court erred in allowing the prosecutor to make the complained of arguments, the error would not result in a mistrial. The statements were brief, the trial court was not asked for curative instructions on any of the errors, Appellant never moved for a mistrial, and the evidence of guilt, which we have already described, is overwhelming.

Appellant's second issue is overruled.

## THE TRIAL COURT'S CHARGE ON PUNISHMENT

In his fifth issue, Appellant argues that the trial court erred in failing to include all statutory terms and conditions of community supervision applicable to sex offenders in its charge to the jury on punishment. *See, e.g.,* TEX. CODE CRIM. PROC. ANN. art. 42.12 §§ 11, 13(B), (G), (H), 14 (West Supp. 2014). The trial court is not required to list these terms and conditions as part of its charge to the jury on punishment, and the trial court could properly refuse this request. *See Yarbrough v. State*, 779 S.W.2d 844, 845 (Tex. Crim. App. 1989) (per curiam); *Croft v. State*, 148 S.W.3d 533, 539-40 (Tex. App.—Houston [14th Dist.] 2004, no pet.).

Appellant's fifth issue is overruled.

11

## MOTION FOR NEW TRIAL – NEWLY DISCOVERED EVIDENCE

In his first issue, Appellant contends that he is entitled to a new trial because newly discovered evidence showed that the victim "withheld relevant information prior to trial" that affected the presentation of the case.

## Standard of Review and Applicable Law

Motions for new trial based on grounds of newly discovered evidence are not favored by courts. *Drew v. State*, 743 S.W.2d 207, 225–26 (Tex. Crim. App. 1987). Texas Code of Criminal Procedure Article 40.001 provides "[a] new trial shall be granted an accused where material evidence favorable to the accused has been discovered since trial." TEX. CODE CRIM. PROC. ANN. art. 40.001 (West 2006). In order for a defendant to be entitled to a new trial on the basis of newly discovered or newly available evidence, the following four-part test must be met: (1) the new evidence must have been unknown or unavailable to him at the time of trial; (2) his failure to discover or to obtain the evidence was not due to his lack of diligence; (3) the new evidence is admissible and not merely cumulative, corroborative, collateral, or impeaching; and (4) the new evidence is probably true and will probably bring about a different result on another trial. *Carsner v. State*, 444 S.W.3d 1, 2–3 (Tex. Crim. App. 2014). The failure of the movant to establish any one of the requirements for a new trial based on newly discovered evidence supports the trial court's denial of the motion. *See Jones v. State*, 234 S.W.3d 151, 157 (Tex. App.—San Antonio 2007, no pet.) (citing *Shafer v. State*, 82 S.W.3d 553, 556 (Tex. App.—San Antonio 2002, pet. ref'd)).

## Discussion

Appellant argues that after the trial's conclusion, the victim gave another interview, and claimed that she and Appellant had sexual intercourse a week or two prior to the alleged incident in this case. Appellant asserts that had he known this, his strategy would have been different. Namely, he contends he would have used the information to show that the victim lied, that it was possible that the penetration occurred during the earlier event, and that he never penetrated the victim on the night of the offenses for which he was indicted. Alternatively, Appellant argues that he might have decided to plead guilty had he known of the interview.

It appears that the crux of Appellant's claim is that he would have used the interview to impeach the victim's credibility at a new trial. This is an improper basis upon which to grant a

motion for new trial for newly discovered evidence. *See Carsner*, 444 S.W.3d at 2–3 (identifying impeachment as improper basis for new trial due to newly discovered evidence).

With regard to his complaint that the interview would dispel any possibility that he penetrated the victim on the date alleged in the indictment, such a conclusion does not follow, because we have already described ample evidence that he penetrated the victim's sexual organ on the night alleged in the indictment. Moreover, one of the focuses of Appellant's defense was that he was a man of good character and that this was an isolated incident that occurred while he was intoxicated. Had the jury known that he committed other sexual offenses against the victim on a prior occasion, it would likely have assessed an even harsher sentence. Consequently, we fail to see how he was harmed by the omission of the evidence.

Finally, with regard to Appellant's argument that he would have pleaded guilty had he known of the interview, he cites no authority to support that a change in trial strategy based on newly discovered evidence is a proper ground for a new trial under these circumstances. Nor have we have found such authority.

Appellant's first issue is overruled.

## CRUEL AND UNUSUAL PUNISHMENT

In his sixth issue, Appellant argues that his concurrent sentences amount to cruel and unusual punishment in violation of the United States and Texas constitutions. However, Appellant made no timely objection to the trial court raising the issue of cruel and unusual punishment and has, therefore, failed to preserve any such error. *See Rhoades v. State*, 934 S.W.2d 113, 120 (Tex. Crim. App. 1996) (waiver with regard to rights under the Texas Constitution); *Curry v. State*, 910 S.W.2d 490, 497 (Tex. Crim. App. 1995) (waiver with regard to rights under the United States Constitution); *see also* TEX. R. APP. P. 33.1; *Mays v. State*, 285 S.W.3d 884, 889 (Tex. Crim. App. 2009). ("Preservation of error is a systemic requirement that a first-level appellate court should ordinarily review on its own motion[;] . . . it [is] incumbent upon the [c]ourt itself to take up error preservation as a threshold issue."). But even despite Appellant's failure to preserve error, we conclude that the sentences about which Appellant complains do not constitute cruel and unusual punishment.

The legislature is vested with the power to define crimes and prescribe penalties. *See Davis v. State*, 905 S.W.2d 655, 664 (Tex. App.—Texarkana 1995, pet. ref'd); *see also Simmons*

*v. State*, 944 S.W.2d 11, 15 (Tex. App.—Tyler 1996, pet. ref'd). Courts have repeatedly held that punishment which falls within the limits prescribed by a valid statute is not excessive, cruel, or unusual. *See* ***Harris v. State***, 656 S.W.2d 481, 486 (Tex. Crim. App. 1983); ***Jordan v. State***, 495 S.W.2d 949, 952 (Tex. Crim. App. 1973); ***Davis***, 905 S.W.2d at 664. In the case at hand, Appellant was convicted of two counts of aggravated sexual assault of a child, the punishment range for which is five to ninety-nine years or life for each offense. *See* TEX. PENAL CODE ANN. §§ 12.32, 22.021 (West 2011 & Supp. 2014). He was also convicted for indecency with a child by contact, the punishment range for which as alleged, is two to twenty years of imprisonment. *See* TEX. PENAL CODE ANN. §§ 12.33, 21.11 (West 2011). Here, the sentences imposed by the trial court fall within the range set forth by the legislature. Therefore, the punishments are not prohibited as cruel, unusual, or excessive per se.

Nonetheless, Appellant urges the court to perform the three part test originally set forth in ***Solem v. Helm***, 463 U.S. 277, 103 S. Ct. 3001, 77 L. Ed. 2d 637 (1983). Under this test, the proportionality of a sentence is evaluated by considering (1) the gravity of the offense and the harshness of the penalty, (2) the sentences imposed on other criminals in the same jurisdiction, and (3) the sentences imposed for commission of the same crime in other jurisdictions. ***Solem***, 463 U.S. at 292, 103 S. Ct. at 3011. The application of the ***Solem*** test has been modified by Texas courts and the Fifth Circuit Court of Appeals in light of the Supreme Court's decision in ***Harmelin v. Michigan***, 501 U.S. 957, 111 S. Ct. 2680, 115 L. Ed. 2d 836 (1991) to require a threshold determination that the sentence is grossly disproportionate to the crime before addressing the remaining elements. *See, e.g.,* ***McGruder v. Puckett***, 954 F.2d 313, 316 (5th Cir. 1992), *cert. denied*, 506 U.S. 849, 113 S. Ct. 146, 121 L. Ed. 2d 98 (1992); *see also* ***Jackson v. State***, 989 S.W.2d 842, 845–46 (Tex. App.—Texarkana 1999, no pet.).

We first must determine whether Appellant's sentences are grossly disproportionate. In so doing, we are guided by the holding in ***Rummel v. Estell***, 445 U.S. 263, 100 S. Ct. 1133, 63 L. Ed. 2d 382 (1980). In ***Rummel***, the Supreme Court addressed the proportionality claim of an appellant who had received a mandatory life sentence under a prior version of the Texas habitual offender statute for a conviction of obtaining $120.75 by false pretenses. *See id.*, 445 U.S. at 266, 100 S. Ct. at 1135. A life sentence was imposed because the appellant also had two prior felony convictions—one for fraudulent use of a credit card to obtain $80.00 worth of goods or services and the other for passing a forged check in the amount of $28.36. *Id.*, 445 U.S. at 266,

100 S. Ct. at 1134–35. After recognizing the legislative prerogative to classify offenses as felonies and, further, considering the purpose of the habitual offender statute, the court determined that the appellant's mandatory life sentence did not constitute cruel and unusual punishment. *Id.*, 445 U.S. at 285, 100 S. Ct. at 1145.

In the case at hand, the two counts of aggravated sexual assault of a child, along with the indecency with a child count, were far more serious than the combination of offenses committed by the appellant in *Rummel*, while Appellant's seventy-five year sentences and twenty year sentence are, in effect, no more severe than the life sentence upheld by the Supreme Court in *Rummel*. Thus, it is reasonable to conclude that if the sentence in *Rummel* was not unconstitutionally disproportionate, then neither are the concurrent sentences assessed against Appellant in the case at hand. Therefore, since the threshold test has not been satisfied, we need not apply the remaining elements of the *Solem* test.

Appellant's sixth issue is overruled.

## DISPOSITION

Having overruled Appellant's six issues, we *affirm* the judgment of the trial court.

JAMES T. WORTHEN
Chief Justice

Opinion delivered April 22, 2015.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*

(DO NOT PUBLISH)

15



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

**APRIL 22, 2015**

**NO. 12-13-00241-CR**

**JAMES SCOTT FRELS,**
Appellant
V.
**THE STATE OF TEXAS,**
Appellee

Appeal from the 258th District Court

of Trinity County, Texas (Tr.Ct.No. 9953)

THIS CAUSE came to be heard on the appellate record and briefs filed herein, and the same being considered, it is the opinion of this court that there was no error in the judgment.

It is therefore ORDERED, ADJUDGED and DECREED that the judgment of the court below **be in all things affirmed**, and that this decision be certified to the court below for observance.

James T. Worthen, Chief Justice.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*